## Ex parte FALLS.

### (District Court, D. New Jersey. May 24, 1918.)

1. ARMY AND NAVY ☞44(2)—MILITARY LAW—"PERSONS WITH THE ARMIES OF THE UNITED STATES IN THE FIELD."

Under Articles of War, art. 2 (Comp. St. 1916, § 2308a), classifying as subject to military law all persons who in time of war are serving with the armies of the United States in the field, a civilian employed in time of war by quartermaster's department and assigned as cook on a vessel transporting army supplies is "serving with the armies in field," and court-martial has jurisdiction to try him for his attempt to desert the ship just before sailing.

2. ARMY AND NAVY ☞44(2)—PERSON SUBJECT TO MILITARY LAW—CONSTITU-TIONAL GUARANTIES.

As Const. art. 1, § 8, gives Congress authority to make rules for the government of land and naval forces, and as Articles of War, art. 2 (Comp. St. 1916, § 2308a), makes civilians serving with armies in the field subject to military law, such a civilian, who attempted to desert, cannot question the jurisdiction of a court-martial authorized by article 58 to impose death or other penalty, etc., on the ground that he was not tried under the guaranties prescribed by the Fifth Amendment; that amendment excepting cases arising in the land or naval forces.

Petition by Harry C. Falls for writ of habeas corpus. Writ dismissed, on the ground that the petitioner was a person "serving with the armies of the United States in the field," and was therefore "subject to military law," and to trial by court-martial.

Edward O. Stanley, Jr., of Newark, N. J., for petitioner.

William S. Weeks, Major, Judge Advocate, for the United States.

DAVIS, District Judge. Harry C. Falls, the petitioner, a citizen of the United States, applied to the Bureau of the United States Army Transport Service, at its office in New York City, which is under the Quartermaster's Department, for employment. Articles of agreement, providing for the service of the petitioner, were signed by him and Capt. J. J. Dawson, Q. M. U. S. R., who was acting for the United States. Petitioner was then assigned to duty as chief cook upon the ship U. S. A. C. T. Edward Luckenbach, which was lying at Bush Terminal, Brooklyn, and was engaged in transporting supplies for the United States Army. While occupying said position, and just before the said ship sailed for a foreign port, petitioner attempted to leave the ship with his baggage and desert the service, and refused to return thereto. He was arrested by the military police at the pier, and was sent to Camp Merritt, N. J., where he was tried by court-martial. The result of the trial has not been announced, pending the disposition of the writ of habeas corpus issued out of this court. The sole question to be decided is whether or not the petitioner "was a person serving with the armies of the United States in the field," and therefore "subject to military law" and trial by court-martial.

[1] Article 2 of the Articles of War (Comp. St. 1916, § 2308a) classifies all persons who are "subject to military law." Included

among the subdivisions thereof are: (a) Officers and soldiers, etc., belonging to the Regular Army; (b) cadets; (c) officers and soldiers of the Marine Corps, when detached for services by order of the President; (d) retainers to the camps, etc., including persons who in time of war are "serving with the armies of the United States in the field"; (e) all persons under sentence adjudged by court-martial; (f) all persons admitted into the Regular Army Soldier's Home at Washington. A distinction is made between "the officers and soldiers" belonging to the Regular Army of the United States—section (a)—and serving "in" the army and "persons" accompanying or serving with the armies of the United States in the field. The former includes officers and soldiers, both volunteers and draftees, serving "in" the Regular Army; the latter includes all "retainers to the camp," and, in time of war, all "persons," including civilians, as distinguished from "officers and soldiers," "accompanying or serving with the armies of the United States in the field." The former class refers to those "in" the service of the "Regular Army"; the latter to those serving "with" the armies of the United States "in the field," and not "in" the "Regular Army." A distinction is likewise made between service "in the Regular Army" and service "in the field." Service in the Regular Army is performed by officers and soldiers in cantonments, fortifications, trenches, etc.; service "in the field" is performed in part, at least, by civilians in any place where their service is required for the good of the Regular Army. The latter service is subservient to the former and exists for it.

"The words 'in the field' do not refer to land only, but to any place, whether on land or water, apart from permanent cantonments or fortifications, where military operations are being conducted." Ex parte Gerlach (D. C.) 247 Fed. 616.

The U. S. A. C. T. Edward Luckenbach was engaged in transporting supplies for the army under the Quartermaster's Department of the United States Army. Carrying supplies to equip and sustain the army is a very important military operation in time of war. The petitioner by a reasonable and natural interpretation of the second Article of War is a person "serving with the armies of the United States in the field," and as such is in the same position with reference to trial by court-martial as any person belonging to one of the other classes enumerated in said article. Any other interpretation of the statute under all the facts would be unreasonable, illogical, and disastrous "in time of war." It is unthinkable that Congress did not mean to include persons in the United States Army Transport Service, engaged in transporting our armies and sustaining them with equipment and supplies, in the class, in time of war, of those "persons accompanying or serving with the armies of the United States in the field." The petitioner, in my opinion, is a person "serving with the armies of the United States in the field," and is "subject to military law." He may, therefore, be tried by court-martial on the charge that he—

"did, at Bush Terminal, Brooklyn, N. Y., on or about the 5th day of April, 1918, attempt to desert the service of the United States by leaving said ship with his baggage just before the hour set for sailing, and refusing to return thereto."

[2] The fifty-eighth Article of War provides that:

"Any person subject to military law who deserts or attempts to desert the service of the United States shall, if the offense be committed in time of war, suffer death or such other punishment as a court-martial may direct."

It is claimed by the petitioner that the trial by court-martial in such case violates the provisions of the Fifth Amendment, and so is unconstitutional, in that it deprives him of a trial by jury on a presentment or indictment by a grand jury. The Fifth Amendment provides that:

"No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces."

This amendment in excepting "cases arising in the land or naval forces" in effect says that in cases arising in those forces a person may be held to answer to a capital or otherwise infamous crime without a presentment or indictment by a grand jury; in other words, such cases may be dealt with according to military law. Runkle v. United States, 19 Ct. Cl. 396; Kurtz v. Moffitt, 115 U. S. 487, 6 Sup. Ct. 148, 29 L. Ed. 458.

It is provided in the Constitution (article 1, § 8), that Congress has power "to make rules for the government and regulations of the land and naval forces." This power Congress has exercised in the second Article of War, by defining the various classes of persons who are subject to military law, and in the fifty-eighth Article of War by declaring the punishment which may be imposed by a court-martial upon any one of those classes who deserts or attempts to desert the service of the United States. The cases—In re Grimley, 137 U. S. 147, 11 Sup. Ct. 54, 34 L. Ed. 636; Tyler v. Pomeroy, 8 Allen (Mass.) 480; Ex parte Milligan, 4 Wall. (71 U. S.) 2, 18 L. Ed. 281, and others cited by counsel for petitioner—arose out of a state of facts so unlike those in the case at bar as to make the language quoted therefrom by counsel inapplicable to the question before me.

It follows from the conclusions reached that the military authorities had jurisdiction to try the petitioner by court-martial, and the writ of habeas corpus must be dismissed.