**PERLSTEIN v. UNITED STATES et al.**

No. 8787.

Circuit Court of Appeals, Third Circuit.

Argued May 14, 1945.

Decided Sept. 13, 1945.

Jerome E. Parker, of Scranton, Pa., for appellant.

David Reich, Dept. of Justice, and Col. Archibald King, Judge Advocate General Dept., both of Washington, D. C. (Tom C. Clark, Asst. Atty. Gen., and Herman F. Reich, Asst. U. S. Atty., both of Lewisburg, Pa., and Myron C. Cramer, Major General, U. S. Army, the Judge Advocate General, of Washington, D. C., on the brief), for appellee.

Before DOBIE, GOODRICH, and McLAUGHLIN, Circuit Judges.

McLAUGHLIN, Circuit Judge.

This is an appeal from the dismissal of a petition for a writ of habeas corpus. On June 10, 1942, the appellant, a citizen of the United States, underwent an examination by a captain of the United States Army Medical Corps to determine whether he was physically fit for civilian work at military bases in Africa. Having passed that test, appellant on June 15, 1942, at New York City, entered into a contract with Johnson, Drake & Piper, Inc., an Army contractor, whereby he was employed as an assistant mechanical superintendent in connection with certain salvage operations in Massawa, Eritrea. Massawa is a harbor on the Red Sea in what was formerly Italian East Africa. Special death and disability insurance was provided under the contract in case of death or injury "of the employee as the result of war hazards." The employment could be terminated by the Army, acting through the officer in charge, for any reason whatsoever. In such event the employer was "obligated to use its best endeavors to the extent authorized by the Army officer in charge to make available to employee transportation and subsistence back to New York, N. Y." If such transportation and subsistence were not available within a reasonable time after termination of employment, the employer was to give the employee the equivalent thereof in money. The contract was approved by a representative of the United States Army.

On August 21, 1942, the appellant arrived at the port of Massawa, then a military base occupied by American and British

troops. He was given charge of certain air conditioning and refrigeration which directly affected the welfare and health of the contractor's employees in that area. The salvage operations involved the raising of a number of Italian and German ships and floating docks which had been scuttled prior to the capture of the port by the British. On September 19, 1942, the United States Army officer in command of the Eritrea Service Command ordered that the appellant be discharged and sent back to the United States at the earliest opportunity. On September 26, 1942, the day he was to board a ship provided by the Army for his return to the United States, he is alleged to have stolen some jewelry and forged a false receipt for same. After he left Massawa the theft was discovered and the military authorities notified. The appellant was arrested on his arrival at Tewfik (Suez) Egypt. At that time he attempted to prove his ownership of the jewelry by means of the forged receipt. Thereafter he was tried under the Articles of War by a general court martial convened at Heliopolis, Egypt. He was convicted of all three offenses charged against him and received a prison sentence.[1] He is at present confined in the Federal Penitentiary, Lewisburg, Pennsylvania.

From the undisputed facts counsel for the appellant earnestly and capably argues: No. 1, That appellant was not a person subject to military law, and No. 2, even assuming that he was subject to military law while employed by the salvage company, his discharge several days prior to the commission of the offenses for which he was convicted and sentenced, terminated any such jurisdiction over him.

Jurisdiction of the Army court martial, which convicted the appellant, is founded on the Articles of War, Second Article, 10 U.S.C.A. § 1473(d), Act of June 4, 1920, chapter 227, subchapter II, Section 1, 41 Stat. 787, which reads:

"Art. 2. Persons subject to military law. —The following persons are subject to these articles and shall be understood as included in the term 'any person subject to military law,' or 'persons subject to military law,' whenever used in these articles:

\*  \*  \*  \*  \*  \*

"(d) All retainers to the camp and all persons accompanying or serving with the armies of the United States without the territorial jurisdiction of the United States, and in time of war all such retainers and persons accompanying or serving with the armies of the United States in the field, both within and without the territorial jurisdiction of the United States, though not otherwise subject to these articles;"

It is urged on behalf of the appellant that for a civilian to be included within the pertinent language of the above Article 2 (d), namely, " \* \* \* all persons accompanying \* \* \* the armies of the United States \* \* \*" he must have some direct and intimate relationship to the military operations with the contention that there was no such connection between Perlstein and the salvage work.

Attached to the return are the affidavits of Major General Maxwell and Lieutenant Colonel Goff, both of the American Army. During the pertinent period General Maxwell's command included Eritrea and Colonel Goff was Staff Judge Advocate in that zone. General Maxwell makes it plain that the salvaging of the ships and docks was an Army project. Johnson, Drake & Piper, Inc., a War Department civilian contractor, did the actual work under the immediate direction of Captain Ellsberg, United States Navy, and the latter's staff of Army officers. Captain Ellsberg had been specially detailed from the Navy for this duty under General Maxwell. While Perlstein did not physically assist in the raising of the ships and docks, his association with that program was as close as if he had and his contribution to its successful completion was of considerable importance. Concededly the weather at Massawa was always very hot and humid. Perlstein's job was to ease the living conditions of the contractor's employees and thus enable them to function more satisfactorily and efficiently. He was an integral part of the whole endeavor and as such was within the intendment of Article 2 (d). The reported decisions construing that section substantiate this view. In McCune v. Kilpatrick, D.C. E.D.Va.1943, 53 F.Supp. 80; the petitioner on September 22, 1943 had been engaged as a cook on a vessel then loading military supplies at Norfolk, Virginia. Thereafter a large number of soldiers came aboard and

---

[1] The charge of uttering the forged receipt on board an American ship at Tewfik was eliminated as far as sentence was concerned on the recommendation of the Staff Judge Advocate which was approved by the Judge Advocate General.

the petitioner deciding that it was not within the terms of his employment to cook for so many passengers, left the ship. After being arrested by the military authorities he applied for a writ of habeas corpus on the ground that he was not within Article 2 (d) of the Articles of War. The District Court found him to be a person accompanying the Army of the United States. In re Berue, D.C.S.D.Ohio 1944, 54 F.Supp. 252, 254, likewise arose out of the late war. There, a merchant seaman aboard a vessel which was part of a convoy proceeding to Casablanca, assaulted the master. He was tried by a court martial and sentenced to prison. His application for habeas corpus was also based on the proposition that he was not a person accompanying the Armed Forces with the Court holding that the conclusion was inescapable that the petitioner was "accompanying or serving with the Armies of the United States." Cases from the first world war are to the same effect. Ex parte Jochen, D.C.S.D.Tex.1919, 257 F. 200; Hines v. Mikell, 4 Cir., 1919, 259 F. 28, certiorari denied 250 U.S. 645, 39 S.Ct. 494, 63 L.Ed. 1187; Ex parte Falls, D.C.D. N.J.1918, 251 F. 415.

The only reported decision holding a civilian not amenable to military jurisdiction under (d) of the Second Article of War is Ex parte Weitz, D.C.D.Mass.1919, 256 F. 58, 59. Weitz was a civilian chauffeur employed by a contractor doing construction work at Camp Devens during the first world war. While transporting the contractor's employees about the camp, the automobile he was operating ran into and killed a soldier. On being held by the military authorities he applied for a writ of habeas corpus. The writ was allowed on the ground that Weitz was not accompanying or serving with the Armed Forces because his work had no "direct relation to the transport, maintenance, or supply of an army in the field." The Court did recognize that if Weitz had been so employed he would have been subject to court martial jurisdiction. Whether or not the District Court's construction of Article 2 (d) is unduly narrow is of no moment here for as we see it, Perlstein was, in the language of the Weitz decision, "directly concerned with the movement or supply of troops." That was the exact reason the enemy shipping was being reclaimed and the port cleared.

Hammond v. Squier, D.C.Wash.1943, 51 F. Supp. 227, also stressed by the appellant, is not in point. The petitioner in that case had been convicted under the General Law of War by a special military commission convened by Admiral Halsey. Neither the Articles of War nor the Articles for the Government of the Navy were involved.

▮ Appellant then contends that his discharge ended any possible Army authority over him. The texts and cases cited in support of this all deal with the situation of military or naval personnel following separation from the particular service. Neither the comment or decisions apply to a civilian, such as the appellant, who had no prior Army connection. Under the specific language of Article 2 (d) of the Articles of War it is not Perlstein's employment status but whether he was still "accompanying" the Army at the time the offenses were committed, that furnishes the test of the court martial's jurisdiction over him. The appellant states that following his discharge he could have stayed on in Massawa as there was nothing in his contract making it mandatory for him to return to America. He says further that the moment he was discharged he was no longer accompanying the Army as the reason for such accompaniment had disappeared. These assertions blandly disregard the facts as shown by the record and of common knowledge. Colonel Goff swears in his affidavit that " * * * no entry of outside civilians was permitted unless for specific work connected with the war effort or when attached to consular offices; that American civilians were required by authorities of the military government to leave the country when their employment with War Department contractors was terminated * * *." The matters involved in this appeal occurred during the period when the Middle East was a theatre of military operations; Rommel and his troops were less than one hundred miles from Alexandria; the Red Sea was the only safe supply route for Egypt; Massawa, in addition, was the port nearest to Gura, the large American air base which was the connecting link in the Air transportation of men and materials from the United States to Egypt, Persia and Russia. Absolute security, lack of confusion, complete coordination and concentration on the then present tremendous Army objectives were essential. Small wonder as Colonel Goff says "That except for a few American refugees and the American Consul and his staff, all United States civilians in Eritrea were employed at work directly connected with the

170

military effort of the United States; that a large number of American civilians were brought to Eritrea as employees of War Department contractors, but that the work performed was as directed by the military authorities of the United States Army; * * *" Perlstein was being sent home but until this could be accomplished and of necessity, considering the stark war conditions existent in Massawa, he remained under Army control. The more so, it is fair to assume, because he was no longer considered a cooperative civilian employee but as a person who had been discharged by order of the commanding officer. From the facts, we think the District Court was entirely justified in finding that Perlstein continued "accompanying" the Army after the contractor had discharged him.

The particular problem has been before the District Court for the Southern District of New York on two accasions. In re Di-Bartolo, D.C.S.D.N.Y.1943, 50 F.Supp. 929, is very much like the present matter. The petitioner in that case was a mechanic who had been employed by the Douglas Aircraft Company at its aircraft depot, Gura, Eritrea in 1942. After he had either been discharged or relieved of active duty because of illness and while still in Eritrea, he stole a diamond ring. He was tried by a general court martial in Eritrea and convicted. On his return to the United States he applied for a writ of habeas corpus contending that he was not subject to military jurisdiction since at the time of his offense his employment had terminated. The Court, passing on that question, said at page 931 of 50 F. Supp.: "The argument, however, is without merit. Assuming that by analogy, military jurisdiction would expire when the 'accompaniment' ceased, it by no means follows that jurisdiction failed when the employment terminated. The primary issue is whether the petitioner accompanied the Armies of the United States." The Court went on to hold that under the facts, "Clearly, the petitioner accompanied the armies of the United States."

In Ex parte Gerlach, D.C.S.D.N.Y.1917, 247 F. 616, 617, Gerlach was a mate on a United States Shipping Board vessel. While with his ship in European waters he was discharged and sent back to the United States aboard an Army transport. During that voyage he disobeyed an order of the master in command of the transport. He was tried by court martial for that offense and found guilty. On his later application for a writ of habeas corpus Circuit Judge Augustus N. Hand, then District Judge, held him to be a person "accompanying the army of the United States."

Affirmed.