### GREWE v. FRANCE.
Civ. A. No. 4477.

District Court, E. D. Wisconsin.
Jan. 9, 1948.

434

Fred W. Shields, of Washington, D. C., and Henry W. Reuss, of Milwaukee, Wis., for petitioner.

Timothy T. Cronin, U. S. Atty., and E. J. Koelzer, Asst. U. S. Atty., both of Milwaukee, Wis., Major Thayer Chapman, of Washington, D. C., Adjutant General's Department of War Department, and Major Walter Schroeder, of Chicago, Ill., Adjutant General's Department of War Department, for respondent.

DUFFY, District Judge.

Petitioner is presently confined at U. S. Disciplinary Barracks, Milwaukee, Wisconsin, pursuant to a sentence imposed by an Army general court-martial held at Frankfurt-am-Main, Germany. After he had filed his petition for a writ of habeas corpus, an order was issued from this court directing respondent to show cause why a writ should not issue. Respondent filed an answer and counsel for petitioner and respondent made oral arguments and submitted briefs. Thereafter a writ issued, respondent filed his return, and a hearing was held. Except for brief testimony by petitioner the matter was submitted upon the complete court-martial record.

In November, 1945, petitioner left his employment with the United States Merchant Marine at Antwerp, Belgium, and obtained a military permit to enter Germany in order to seek employment. Thereafter he was employed as a mechanical engineer with the Office of Chief Engineer, U. S. Forces, European Theater, at Frankfurt-am-Main, Germany, commencing work on December 14, 1945.

At the time of his arrest petitioner was occupying a flat in the compound of Frankfurt. This was a portion of the city which the United States Forces had separated from the balance of the city of Frankfurt by a high barbed wire fence, and no civilian was allowed to enter or leave the compound unless he possessed a military pass or permit.

On June 12, 1946, petitioner was arrested by two military police upon complaint of a Lt. Col. Mayfield, who charged that petitioner had endangered lives of passers-by by firing a pistol from the window of his billet. The military police, upon being refused admittance to his quarters, opened the door with a pass-key and found a pistol on the bed which was still warm, and they thereupon arrested petitioner. After taking petitioner to the office of the Provost Marshal the two military police and a lieutenant returned to petitioner's billet and searched it. At that time other weapons, ammunition, five currency exchange books, a quantity of rations, and cigarettes and other items were found and impounded.

Petitioner claims he was confined until June 24, 1946, and then released; that on June 26 he resigned his position; also that on June 26 he was discharged by one officer and on July 8 discharged by another officer; and that he was re-arrested on July 9.

At the court-martial trial, petitioner was represented by civilian counsel from the United States of his own choosing. Petitioner entered a plea in bar that the court-martial was without jurisdiction to try him since at the time of the trial he was a civilian who was no longer employed by the Army. He also made a motion to suppress the evidence obtained by the search of his billet. The court overruled his plea in bar and denied the motion to suppress. Petitioner was found guilty of violating the 93rd and 96th Articles of War, 10 U.S.C.A. §§ 1565, 1568.

■ On the date when petitioner was arrested and his billet was searched, he was a person subject to military law. Arti-

cle 2 of the Articles of War, 10 U.S.C.A. § 1473, provides:

"Persons subject to military law

\* \* \* \* \* \*

"(d) All retainers to the camp and all persons accompanying or serving with the Armies of the United States without the territorial jurisdiction of the United States, and in time of war all such retainers and persons accompanying or serving with the Armies of the United States in the field, both within and without the territorial jurisdiction of the United States, though not otherwise subject to these articles; \* \* \*."

In the following cases courts have held civilians to be subject to military law:

In McCune v. Kilpatrick, D.C., 53 F. Supp. 80, the petitioner was a cook on a vessel loading military supplies at Norfolk, Virginia. When he saw 500 soldiers coming aboard he jumped ship. The court held that he "was a person 'accompanying' the army of the United States."

In Perlstein v. United States, 3 Cir., 151 F.2d 167, petitioner was employed by a corporation which was engaged in salvage operations in the harbor at Massawa, Eritrea, under a contract with the United States Army. Petitioner's duty did not require him to actually assist in the salvage operations, but he had the job of caring for air conditioning and refrigeration to ease the living conditions of other employees. Petitioner had been discharged and was awaiting transportation home. He was alleged to have stolen some jewelry on the day he was to board ship provided by the Army for his return to the United States. The theft had been discovered after he left Massawa. He was apprehended in Egypt where he was tried by court-martial. In spite of the fact that petitioner's arrest and his trial by court-martial both occurred after he had been discharged, the court held that he was a person subject to military law, being a person accompanying the Army of the United States in the field in time of war.

In another case, In re Berue, D.C., 54 F.Supp. 252, 256, a merchant seaman was employed aboard a ship which was a part of a convoy on the way to Casablanca.

He was tried by court-martial for assaulting the master of the boat during the voyage. Petitioner contended he was not a person accompanying armed forces, but the court held that the conclusion was "inescapable that the petitioner was 'accompanying or serving with the Armies of the United States.'"

In three earlier cases the courts came to similar conclusions: In Ex parte Jochen, D.C.S.D.Tex.1919, 257 F. 200, the petitioner was a civilian superintendent in the Quartermaster Corps. His petition for a writ of habeas corpus was denied on the grounds that he could be considered either a retainer to the camp or a person accompanying or serving with the Army in the field in time of war. In Hines v. Mikell, 4 Cir., 1919, 259 F. 28, the petitioner was employed as an auditor by the Quartermaster at Camp Jackson during World War I. The court held that he was serving with the Army in the field in time of war, and therefore subject to military justice. In Ex parte Falls, D.C.,N.J.1918, 251 F. 415, petitioner had signed as Chief Cook on a U. S. Army Transport which was to sail for Europe. When he attempted to leave ship prior to the departure he was arrested and tried by court-martial for desertion. His application for a writ of habeas corpus was denied on the ground he was a person "serving with the Armies of the United States in the field."

In several of the aforementioned cases the courts placed some emphasis on the fact that the civilian involved was a person accompanying the army in the field. Plaintiff here argues that in June, 1946, the shooting war in Germany was over and that the American forces were no longer engaged in military operations, and concludes that he, therefore, could not be considered as accompanying the army in the field.

Petitioner's argument ignores the other provision of Article 2(d), to wit: "\* \* \* all persons accompanying or serving with the Armies of the United States without the territorial jurisdiction of the United States, \* \* \*." But, in any event, petitioner should be considered as a person accompanying or serving with the Armies of the United States in the field in time of

war. When petitioner went to Germany on a military permit, the country was a militarily occupied zone wherein no German courts were functioning. Petitioner's employment was with the Office of Chief Engineer of the United States Forces, and in my opinion he came under both classifications of Article 2(d): (1) a person accompanying or serving with the Armies of the United States without the territorial jurisdiction of the United States, and (2) in time of war a person accompanying or serving with the Armies of the United States in the field.

■ But petitioner argues that, even though he were subject to military law when he went to Germany and even on the date of his arrest and the search of his billet, his status had changed by the date of his court-martial. He claims that prior to the date of his trial he either had been dismissed from the government service, or his resignation had been accepted, and that in either event he was no longer accompanying or serving with the Armies of the United States. Petitioner's contention cannot be sustained.

From the record it is somewhat uncertain whether or when petitioner's employment had been terminated. At the trial petitioner testified that his contract of employment was for a period of one year, with option to cancel upon 30 days' notice, which option he alleges to have exercised on June 26, 1946. But, assuming his employment had terminated, petitioner was not free to come and go as he pleased. He was not allowed to merge with the population of Germany. He was there only with the consent of the theater commander. Germany had no courts functioning where he could be tried for any offense he might commit.

Upon oral argument, in response to a question by the court, petitioner's counsel stated that in his opinion petitioner was not subject to any authority. In other words, petitioner could with impunity have caused confusion and great damage, and even endangered the lives of members of our armed forces. Such would be a situation which, in my opinion, Congress sought to avoid when it enacted Article 2(d).

When the offenses of which petitioner was convicted were committed he was a person "serving with" the Army. At the time of his arrest he was living in the Army controlled compound in an allocated building. At the time of his court-martial he was at least "accompanying" the Army of the United States. Assuming that the Second Article of War is constitutional, the court-martial had jurisdiction of the petitioner's person and of the offenses charged.

■ Petitioner earnestly argues that that part of the Second Article of War previously quoted, which was enacted in its present form in 1916, is unconstitutional because it is in violation of the Fifth Amendment of the Constitution which reads: "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger: * * *." Petitioner contends that the exception, "except in cases arising in the land or naval forces," does not cover his situation in the case at bar. No authority is cited by petitioner to uphold his viewpoint that Article 2(d) is unconstitutional. On the other hand there are several decisions upholding the constitutionality of this article. Ex parte Falls, D.C.N.J.1918, 251 F. 415; Ex parte Jochen, D.C.S.D.Tex.1919, 257 F. 200; Ex parte Gerlach, D.C.S.D.N.Y.1917, 247 F. 616; McCune v. Kilpatrick, D.C.E.D.Va. 1943, 53 F.Supp. 80. In Ex parte Gerlach, supra, the court in an opinion by Judge Augustus Hand said (at page 618 of 247 F.): "Section 8 of article 1 of the Constitution is the source of authority for the Articles of War. Congress is thereby given power to raise and support armies, to make rules for the government of land and naval forces, and to make all laws which shall be necessary for carrying into execution the foregoing powers and all other powers vested by the Constitution in the government of the United States. The Articles were enacted in pursuance of the general war power, and ought to be given a broad scope in order to afford the fullest pro-

tection to the nation. The act is, in my opinion, constitutional. * * *"

Although counsel for petitioner sharply criticizes several of the decisions hereinbefore quoted (including the Gerlach opinion), the United States Supreme Court refers to them, apparently with approval, in Duncan v. Kahanamoker, 327 U.S. 304, 313, 66 S.Ct. 606, 610, 90 L.Ed. 688, as follows: " * * * Our question does not involve the well-established power of the military to exercise jurisdiction over members of the armed forces (citing cases), those directly connected with such forces (citing Ex parte Gerlach, supra, Ex parte Falls, supra, Ex parte Jochen, supra, and Hines v. Mikell, supra) * * *."

I find no difficulty in agreeing with the doctrine pronounced in the quotation hereinabove from Judge Hand's opinion in the Gerlach case. It would be an unwarranted and strained construction of the Fifth Amendment to conclude that the exception referred only to sworn-in members of the land or naval forces who wear uniforms. As wars are fought, those in uniform are oftimes dependent upon the help and assistance of others who, for one reason or another, are not uniformed members of the Army and naval forces, but who work in very close relationship therewith. I hold that Article 2(d) is constitutional.

 The final question argued is whether this court has the power to review the proceedings of a court-martial where the accused claims to have been deprived of a constitutional right—in other words, whether the petitioner in this case is entitled to protection of the Fourth Amendment. Respondent urges that even though the articles admitted into evidence at petitioner's trial by court-martial were obtained by an unlawful search and seizure, it was a mere procedural error which this court cannot review on habeas corpus. A number of cases are cited which support respondent's position.

The decision in the case at bar might well be based upon the doctrine announced in such cases. Yet it must be admitted that the tendency in recent years is to enlarge the scope of the hearing upon habeas corpus. It has been held that the Fifth Amendment is applicable to military personnel. Wade v. Hunter, D.C., 72 F.Supp. 755. Circuit Judge Biggs, sitting as a district judge, held that military personnel were entitled to due process of law. Hicks v. Hiatt, D.C., 64 F.Supp. 238. The same ruling was likewise made in Shapiro v. United States, Ct.Cl., 69 F.Supp. 205. In view of the trend of recent decisions, I shall state briefly why I conclude that petitioner was not denied due process of law.

This court will take judicial notice of the fact that in June and July, 1946, a state of war existed between this nation and that of Germany, and that our armed forces occupied certain areas of enemy territory, including Frankfurt-am-Main. Section III of Proclamation I, issued by General Dwight Eisenhower, had suspended all former German courts in the occupied territory. Also, German police were denied all power of arrest over civilian nationals of the Allied Nations. At the time involved, although open hostilities had ceased, it was highly essential that the commanding officer of our forces maintain strict discipline and control over the German population in that area, as well as over our own troops and those accompanying them. Underground opposition to our forces was almost to be expected. The situation was still tense and fraught with danger. In this setting petitioner was arrested in good faith. Under military law no warrant for his arrest was required. A search without a warrant was just as much in order as if the commanding officer had searched the barracks occupied by his troops. In fact, no courts from which a search warrant could be obtained were functioning. The Fourth Amendment condems only unreasonable search and seizure. Under the circumstances present the search of the government controlled premises occupied by the petitioner was not unreasonable.

The writ of habeas corpus will be discharged and petitioner remanded to the custody of the respondent.