**UNITED STATES of America ex rel. Bruce WILSON, Petitioner,**

v.

**Major General John F. BOHLANDER, Commander, Fitzsimons Army Hospital, Denver, Colorado, Respondent.**

**Civ. No. 6161.**

United States District Court
D. Colorado.

Nov. 10, 1958.

Arthur John Keefe, Washington, D. C., and William C. McClearn, Denver, Colo., for petitioner.

Donald E. Kelley, U. S. Atty., and John S. Pfeiffer, Asst. U. S. Atty., Denver, Colo., and F. M. Sasse, Colonel, JAGC, Fitzsimons Army Hospital, Denver, Colo., and Lt. Col. Peter S. Wondolowski, JAGC, U. S. Army, Washington, D. C., for respondent.

ARRAJ, District Judge.

This matter is before the Court on a petition for a Writ of Habeas Corpus. The petitioner is and at all times pertinent hereto was a citizen of the United States employed as a civilian auditor by the Department of the Army in the Comptroller's Division in Berlin, Germany. During the time he was so employed, petitioner was charged with certain offenses in violation of Articles 125 and 134 of the Uniform Code of Military Justice, 10 U.S.C.A. §§ 925, 934. On his plea of guilty a General Court Martial convicted him of various violations of the said Articles and sentenced him to 10 years at hard labor; the Commanding General approved the conviction and reduced the sentence to 5 years. The Board of Review affirmed the conviction and the Court of Military Appeals affirmed the Board's action. United States v. Bruce Wilson, 9 USCMA 60, 25 CMR 322 (1958).

Petitioner has been detained and confined under the jurisdiction of the United States Army, under said sentence, since August 21, 1956, and is presently con-

fined in this district at Fitzsimons Army Hospital, Denver, Colorado.

Petitioner has filed his Petition for a Writ of Habeas Corpus in this Court contending that his arrest, detention and confinement by the military authorities has been and is unlawful and in violation of the Constitution of the United States; he further contends that as an American citizen and civilian he could not be tried by court martial, and that only a Court constituted under Article III of the Constitution has jurisdiction to try him.

Respondent defends on the ground that jurisdiction was proper under Article 2(11) of the Uniform Code of Military Justice. Thus, the sole question to be determined by this Court is whether Article 2(11) of the Uniform Code of Military Justice can be constitutionally applied to an American citizen employed by the Department of the Army overseas as a civilian who is charged with a crime in time of peace.

Article 2 of the Uniform Code of Military Justice, 10 U.S.C.A. § 802, reads as follows:

"Art. 2. Persons subject to this chapter.

"The following persons are subject to this chapter:

\* \* \* \* \* \*

"(11) Subject to any treaty or agreement to which the United States is or may be a party or to any accepted rule of international law, persons serving with, employed by, or accompanying the armed forces outside the United States and outside the following: that part of Alaska east of longitude 172 degrees west, the Canal Zone, the main group of the Hawaiian Islands, Puerto Rico, and the Virgin Islands."

The relevant portions of the Constitution under which respondent seeks to sustain the constitutionality of Article 2(11) are Article I, Section 8, Clause 14, which provides that,

"The Congress shall have Power \* \* \* To make Rules for the Government and Regulation of the land and naval Forces."

and the final clause of Article I, Section 8, which empowers Congress to make all laws which shall be necessary and proper for carrying into execution,

"\* \* \* the foregoing Powers, and all other Powers vested by this Constitution in the government of the United States, or in any Department or Officer thereof."

The starting point in any discussion of Article 2(11) is Reid v. Covert, 1957, 354 U.S. 1, 77 S.Ct. 1222, 1245, 1 L.Ed. 2d 1148, which for the first time, raised serious doubts concerning court martial jurisdiction over civilians generally, although the case was directly concerned only with dependents in capital cases. That case involved the trial by court martial of a dependent wife for the premeditated murder of her serviceman husband. Justice Black, speaking for himself, the Chief Justice, and Justices Douglas and Brennan, held that the necessary and proper clause could not expand jurisdiction to cover persons not within the terms of Clause 14. Although he did not define the precise boundary between civilians and those in the land and naval forces, he held that dependents were not within Clause 14, and therefore no authority existed for depriving them of their rights as civilians under other provisions of the Constitution. The language of the opinion is broad in certain phases and it appears to embrace civilians generally, without restriction to dependents. Justice Frankfurter concurred in the result, but limited his opinion strictly to dependents in capital cases. He found it necessary to,

"weigh all the factors involved in these cases in order to decide whether these women dependents are so closely related to what Congress may allowably deem essential for the effective 'Government and Regulation of the land and naval Forces' that they may be subjected to court-martial jurisdiction in capital cases, when the consequence is loss of the protections afforded by Article III

and the Fifth and Sixth Amendments."

In weighing these considerations, he concluded that their proximity to the armed forces was not so clearly demanded for the effective government and regulation of the armed forces as to justify court martial jurisdiction over capital offenses. Justice Harlan also concurred in the result, and on even narrower grounds. He reasoned that Clause 14 was modified by the necessary and proper clause, and that dependents had sufficiently close connection with the proper and effective functioning of our overseas forces to justify court martial jurisdiction. On the other hand, whether an absolute right to the guarantees of the Constitution existed depended on the circumstances, and, in a capital case, those guarantees were so important that the dependents here could not be deprived of them. Justice Clark, with whom Justice Burton joined, dissented. They saw no distinction between capital and non-capital cases, and thought that Article 2(11) was reasonably necessary to the power of Congress to provide for the government of our armed forces. Justice Whittaker took no part in the decision.

The first issue to resolve is whether civilian employees of the armed forces overseas are within the terms of Article I, Section 8, Clause 14 of the Constitution.

In a series of early cases, paymaster's clerks were held to be "in military service" for jurisdictional purposes; however, it is noted that these clerks, although not enlisted or drafted, or regular or reserve officers, nevertheless possessed more than the usual indicia of civilian employees. It appears from the cases that they were appointed by the Secretary of the Army or Navy or the commander of the vessel on which they served, that they were paid by the Department of the Army or Navy, and that they even wore a uniform. One case specifically refers to them as officers. They appear, on the facts, to have been comparable to the present class of Department of the Army civilians, with the exception that they wore uniforms. In re Thomas, D.C.Miss.1869, 23 Fed.Cas., p. 931, No. 13,888; United States v. Bogart, D.C.N.Y.1869, 24 Fed.Cas., p. 1184, No. 14,616; In re Bogart, C.C.Cal.1873, 3 Fed.Cas., p. 796, No. 1,596; In re Reed, C.C.Mass.1879, 20 Fed.Cas., p. 409, No. 11,636.

Another series of cases arose out of Article 2(d) of the Articles of War of 1916, 39 Stat. 651, which subjected to military court martial jurisdiction,

"All retainers to the camp and all persons accompanying or serving with the armies of the United States without the territorial jurisdiction of the United States, and in time of war all such retainers and persons accompanying or serving with the armies of the United States in the field, both within and without the territorial jurisdiction of the United States, though not otherwise subject to these articles."

In World War I and again in World War II, military court martial jurisdiction over civilians both in the United States and overseas was upheld under the terms of this article. E. g. Hines v. Mikell, 4 Cir., 1919, 259 F. 28, certiorari denied 250 U.S. 645, 39 S.Ct. 494, 63 L.Ed. 1187 (civilian auditor in South Carolina); Ex parte Gerlach, D.C.N.Y.1917, 247 F. 616 (civilian mate on an Army transport); Ex parte Falls, D.C.N.J.1918, 251 F. 415 (civilian cook on an army transport in New York harbor); Ex parte Jochen, D.C.Tex.1919, 257 F. 200 (civilian superintendent of Quartermaster Corps with troops on the Mexican border); Perlstein v. United States, 3 Cir., 1945, 151 F.2d 167, certiorari granted 327 U.S. 777, 66 S.Ct. 956, 90 L.Ed. 1005, dismissed as moot 328 U.S. 822, 66 S.Ct. 1358, 90 L.Ed. 1602 (assistant mechanical superintendent employed by private army contractor in Eritrea, Africa, in 1942); In re Di Bartolo, D.C.N.Y.1943, 50 F.Supp. 929 (mechanic with Douglas Aircraft Co. in Eritrea, Africa, in 1942); McCune v. Kilpatrick, D.C.Va.1943, 53 F.Supp. 80 (cook on military vessel loading military supplies); In re Berue, D.C.Ohio 1944,

54 F.Supp. 252 (merchant seaman on convoy vessel).

In Grewe v. France, D.C.Wis.1948, 75 F.Supp. 433, the defendant had been a mechanical engineer with the Office of the Chief Engineer, U. S. Forces, European Theater, in Frankfurt, Germany, in 1946. The Court held that Article 2(d) was constitutional and that, since Germany was still a militarily occupied zone and in a state of war, though hostilities had ceased, there was jurisdiction under either section of Article 2(d). This is a borderline case, but probably should be considered as one of the wartime cases. See also, United States ex rel. Mobley v. Handy, 5 Cir., 1949, 176 F.2d 491, certiorari denied 338 U.S. 904, 70 S.Ct. 306, 94 L.Ed. 556, rehearing denied 338 U.S. 945, 70 S.Ct. 427, 94 L.Ed. 583 (civilian post exchange employee arrested in the United States to be returned to Germany for court martial).

On the other hand, a few cases have refused court martial jurisdiction when it was clear that the person attempted to be court martialed was a civilian with no relationship to the armed forces. The first of these cases was Ex parte Milligan, 1866, 4 Wall. 2, 107, 71 U.S. 2, 107, 18 L.Ed. 281, where a civilian was arrested in Indiana and tried by a military commission for offenses against the United States committed during wartime. The Court held that there was no jurisdiction on the ground that military tribunals could not constitutionally be substituted for civil courts that were open and operating in the proper and unobstructed exercise of their jurisdiction. It should be noted that the petitioner in this case had no relationship to the military in any way.

Again, in Ex parte Henderson, C.C.Ky. 1879, 11 Fed.Cas., p. 1067, No. 6,349, the Court struck down as unconstitutional a statute that attempted to confer court martial jurisdiction over a civilian contractor who furnished supplies to the army in the United States.

In only one of the group of World War I cases was military jurisdiction not upheld. In Ex parte Weitz, D.C.Mass. 1919, 256 F. 58, 59, the defendant was a civilian chauffeur for a contractor doing construction work for the military in Massachusetts, and the Court held that his work had no "direct relation to the transport, maintenance, or supply of an army in the field," although adding that if he had been so employed and within the terms of Article 2(d) of the Articles of War, he would have been subject to court martial jurisdiction. There appears to be nothing inconsistent between this case and the cases cited above for the general proposition.

Finally, in Duncan v. Kahanamoku, 1946, 327 U.S. 304, 66 S.Ct. 606, 90 L.Ed. 688, the Court refused to sustain military jurisdiction over a civilian shipfitter employed by the Navy Yard in Honolulu and over a civilian stockbroker in Honolulu who had no connection with the armed forces.

Under Article 2(11) of the Uniform Code of Military Justice, jurisdiction over civilian employees in peacetime has been directly considered in only four reported opinions, and the first of these was prior to Reid v. Covert, supra. In the first of these cases, In re Varney's Petition, D.C.Cal.1956, 141 F.Supp. 190, Varney, a Department of the Army civilian in Japan who had been convicted by a general court martial, was denied relief by habeas corpus on four grounds, (1) He had not exhausted all remedies available to him in the military appellate court system. (2) He was within the express terms of Article 2(11) and therefore in a status which did not entitle him to a jury trial. (3) While voluntarily in a foreign country with the Army, he had no right to a trial by jury, on the authority of In re Ross (consular court) and the Insular Cases [Ross v. McIntyre, 140 U.S. 453, 11 S.Ct. 897, 35 L.Ed. 581; Dorr v. United States, 195 U.S. 138, 24 S.Ct. 808, 49 L.Ed. 128; Ex parte Bakelite Corp., 279 U.S. 438, 49 S.Ct. 411, 73 L.Ed. 789]. (4) Congress is empowered to authorize trial by court martial of civilians associated with the land and naval forces by virtue of their power under Article I, Section 8, Clause 14, as

supplemented by the Necessary and Proper Clause. The Court then reasoned that it was necessary to have jurisdiction over civilians such as the petitioner.

In Grisham v. Taylor, D.C.Pa.1958, 161 F.Supp. 112, 115, said to be on appeal to the 3d Circuit and due to be argued soon, petitioner was a Department of the Army civilian assigned to the Corps of Engineers, and on temporary duty in France. 261 F.2d 204. He was tried by a general court martial for premeditated murder and found guilty of unpremeditated murder. The Court considered Judge Holtzoff's opinion in United States ex rel. Guagliardo v. McElroy, infra, the Toth case, infra, and Reid v. Covert, supra, concluding with the following holding:

"In the light of the divergent opinions in Covert and the self-defeating alternatives, enumerated and evaluated by Mr. Justice Harlan in Covert (Note 12, Page 76 [of 354 U.S., page 1261 of 77 S.Ct.]), I conclude, paraphrasing Mr. Justice Black, Covert supra, that this is a circumstance where petitioner was in the armed services for purposes of Clause 14 even though he had not been formally inducted into the military and did not wear a uniform."

The Court added to this that Article 2 (11) was constitutional and that civilian employees abroad attached to the armed forces could be subjected to trial by court martial, even in capital cases.

In United States ex rel. Guagliardo v. McElroy, D.C.D.C.1958, 158 F.Supp. 171, 175, the petitioner was an electrical lineman employed by the Department of the Air Force in Morocco. He was tried and convicted by a general court martial for a non-capital offense. In an excellent summary of the existing state of the Supreme Court's decisions, Judge Holtzoff summarized the holdings as follows:

"A former member of the armed forces, who has been discharged and is no longer within the control of the military, is not subject to trial by court-martial for an offense committed during his term of service.

"A wife, a child, or other dependent of a member of the armed forces is not subject to trial by court-martial in a capital case.

"The Supreme Court has not determined whether a dependent accompanying a serviceman is subject to trial by court-martial in a case other than capital.

"Similarly, the Supreme Court has never had occasion to decide whether a civilian employee attached to the armed forces in a foreign country is subject to trial by court-martial."

The Court then considered the history of the various provisions in military codes that subjected civilian employees to court martial jurisdiction. However, in denying relief to the petitioner, the Court did so on the grounds,

"That a law subjecting personnel of the type involved in this case to trial by court-martial is necessary and proper for carrying into execution the power to make rules for the government and regulation of the land and naval forces, is demonstrated by a consideration of the consequences of any conclusion that would deny this authority to the Congress. It is manifestly essential to enforce law and order at stations maintained by the armed forces of the United States in foreign countries. The use of civilian employees is frequently indispensable in connection with the operation of these stations. If court-martial jurisdiction may not be exercised in respect to such civilians, other means of law enforcement would create difficulties that in some instances might prove insuperable."

This decision was reversed by the Court of Appeals for the District of Columbia in the fourth reported opinion on this question, on the ground that the clause "employed by" was not severable from the other clause struck down in Reid v. Covert. Therefore, the Court considered itself bound by the decision in Reid v. Covert, and did not consider the issue of whether civilian employees could consti-

tutionally be subjected to court martial jurisdiction. Judge Burger entered a strong dissent on the grounds that: (1) The majority result was not compelled by Reid v. Covert, because a civilian employee could be either "in" the armed forces in accord with the Black opinion, or that he could be within the Necessary and Proper Clause as suggested by the concurring opinions. (2) There is historic precedent for subjecting civilian employees to court martial jurisdiction whereas there is none for dependents. (3) Clear necessity exists for subjecting civilian employees to court martial jurisdiction. (4) No practical alternative exists. United States ex rel. Guagliardo v. McElroy, D.C.Cir., 259 F.2d 927, reversing D.C., 158 F.Supp. 171 (petition for certiorari said to be pending before the United States Supreme Court). The logic of this dissent is appealing; it is well reasoned and most convincing and this Court is persuaded to adopt it.

There appears to be a clear distinction between those cases sustaining jurisdiction and those denying it. When the person involved was clearly a civilian with no material relationship to the armed forces, jurisdiction has consistently been denied to the armed forces. On the other hand, when the individual concerned has had a clear relationship to the armed forces, so that he may properly be said to be a part of them, jurisdiction has been upheld in all cases except the last one cited above, where the Court voiced no opinion on the point. The Supreme Court appears to have recognized this distinction. For example, Mr. Justice Black, in Duncan v. Kahaamoku, supra, speaking for the Court, said at page 313 of 327 U.S., at page 610 of 66 S.Ct.,

"Our question does not involve the well-established power of the military to exercise jurisdiction over members of the armed forces, *those directly connected with such forces*, or enemy belligerents, prisoners of war, or others charged with violating the laws of war." (Italics added.)

At Note 7, for the proposition underlined here, the Court cited Ex parte Gerlach, supra; Ex parte Falls, supra; Ex parte Jochen, supra, and Hines v. Mikell, supra.

Again, in United States ex rel. Toth v. Quarles, 1955, 350 U.S. 11, at page 15, 76 S.Ct. 1, at page 4, 100 L.Ed. 8, Justice Black, in the majority opinion to which five other justices subscribed, said:

"For given its natural meaning, the power granted Congress 'To make Rules' to regulate 'the land and naval Forces' would seem to restrict court-martial jurisdiction to persons who are actually members *or part of* the armed forces." (Italics added.)

■■ Finally, in the Black opinion in Reid v. Covert, supra [354 U.S. 1, 77 S.Ct. 1233], the learned Justice said that,

"Even if it were possible, we need not attempt here to precisely define the boundary between 'civilians' and members of the 'land and naval Forces.' We recognize that there might be circumstances where a person could be 'in' the armed services for purposes of Clause 14 even though he had not formally been inducted into the military or did not wear a uniform."

The Court then added, however, that dependents were not in this class of persons who could be considered a part of the armed services. Presuming that this language has some meaning, we think it at least recognizes a distinction between those who accompany our armed forces overseas for purposes of convenience only, such as dependents, and those who are so closely aligned with the necessary functioning of our armed forces overseas that they may logically be said to be a part of those forces. This distinction, based on the relationship of the person concerned to the armed forces, runs through all the cases cited above, and we think it a valid one. Consequently, it is the opinion of this Court that petitioner here was in the armed services for purposes of jurisdiction under Article I, Section 8, Clause 14, of the Constitution.

However, even if it should be considered that the petitioner does not fall within the express terms of Clause 14 for

purposes of jurisdiction, this Court is of the opinion that the result arrived at in this case is equally sustainable on other grounds. The parties here are also at issue on the question of whether jurisdiction over a civilian employee overseas can be sustained by virtue of the necessary and proper clause of the Constitution, irrespective of whether that same person is within the terms of Clause 14. This, of course, resolves itself to the issue of whether the necessary and proper clause modifies or extends Clause 14.

First, it should be noted that the Supreme Court in Reid v. Covert was equally divided on this question. The four justices in the Black opinion agreed that

" * * * the Necessary and Proper Clause cannot operate to extend military jurisdiction to any group of persons beyond that class described in Clause 14—'the land and naval Forces.' "

On the other hand, Justice Frankfurter expressed the opinion that the Necessary and Proper Clause was an integral part of Clause 14, and that Congress could therefore sweep in whatever was necessary to make effective the express powers of Clause 14. Justice Harlan also disagreed with the Black opinion on this point, and agreed with Justice Frankfurter that the Necessary and Proper Clause was to be taken with Clause 14 and could be used to expand it. The dissent also assumed this to be true, and devoted itself almost entirely to a consideration of whether Article 2(11) was reasonably necessary to the power given Congress by Clause 14.

■ This Court is disposed to follow the view that the Necessary and Proper Clause does give the Congress power to enact whatever legislation is necessary for the effective government and regulation of our armed forces. This view has been adopted by the other courts that have considered the question, and it has previously been assumed to be settled law that the Necessary and Proper Clause, as stated by Justice Harlan in Reid v. Covert, "is to be read with *all* the powers of Congress." See e. g. United States

ex rel. Guagliardo v. McElroy, supra, 158 F.Supp. at page 178; McCulloch v. State of Maryland, 1819, 4 Wheat. 316, 17 U.S. 316, 4 L.Ed. 579.

The final issue for determination then is whether jurisdiction over civilian employees of the armed forces overseas is necessary for the government and regulation of those armed forces.

■ Since World War II the troubled international situation has made it necessary for the United States to deploy its armed forces throughout the World, and not infrequently in remote and isolated areas. These forces include a large number of civilian employees, many of whom are technicians and specialists in the fields of electronics, rocketry, atomic energy, aircraft and aircraft weapons. Their relationship to the effective functioning of our armed forces is well known. It is seriously doubted if many of these civilian employees could be replaced by uniformed soldiers, sailors or airmen capable of carrying out the assigned tasks.

In many instances these civilians may very well possess some of this nation's highest and most guarded secrets which are necessary to their employment and to the defense of the free world. Obviously, the military commander must have means to insure control of civilian employees not only for the most effective utilization of their skill, but also to insure the proper utilization and protection of highly classified security information they may possess.

The military commander has the primary responsibility of maintaining armed forces in a state of combat readiness to meet any eventuality. He has the further responsibility of operating his military community in such a way as to give the best possible impression of the United States to the people in foreign areas. To discharge these responsibilities the commander must have some control over the activities of his charges both uniformed and non-uniformed. These civilian employees usually enjoy the privileges and benefits received by the military; and nearly every essential of

their daily living and activities is interwoven with those of the military. Considered realistically, these civilian employees are a part of our armed forces overseas. The question here is not simply whether military or Article III civil courts should have jurisdiction. In many cases, if not in all cases, the realities of the situation reduce it to a question of whether anyone should have jurisdiction. A variety of alternatives to military jurisdiction have been proposed and fully considered. See e. g. Note 12 on page 76 of 354 U.S., on page 1261 of 77 S.Ct. of Justice Harlan's opinion in Reid v. Covert; 71 Harvard Law Review 712. None have been found or even proposed that are wholly satisfactory, and serious doubt exists that any of them would work at all. Even if certain alternative solutions were available in certain situations, such as trial in a civil court, these solutions would seriously diminish a local commander's effectiveness in maintaining law and order on his post, and could even greatly lessen the security of the post itself. Without the power of disciplinary action over these civilians the commander's efforts to successfully fulfill his mission in a foreign land would be seriously impaired.

■■ Certainly it cannot be said that these considerations are irrelevant in determining whether jurisdiction over civilian employees overseas is necessary to the effective government and regulation of our armed forces. Therefore, it is the conclusion of this Court that Congress may, under the authority of the Necessary and Proper Clause, provide for court martial jurisdiction in non-capital cases over others than uniformed members of our armed forces when necessary for the effective government and regulation of those armed forces. It is also the conclusion of this Court that court martial jurisdiction in non-capital cases over civilian employees of the armed forces in foreign lands is necessary for the effective government and regulation of our armed forces.

The Order to show cause is discharged and the petition is dismissed.