UNITED STATES of America ex rel.
Dominic GUAGLIARDO, Petitioner,

v.

Neil H. McELROY, Secretary of Defense,
et al., Respondents.

No. 123–57.

United States District Court
District of Columbia.

Jan. 13, 1958.

Irwin Geiger and Michael A. Schuchat, Washington, D. C., for petitioner.

Oliver Gasch, U. S. Atty., Edward F. Troxell, Principal Asst. U. S. Atty., and John W. Kern, III, Asst. U. S. Atty., Washington, D. C., for respondents.

HOLTZOFF, District Judge.

The question presented in this *habeas corpus* proceeding is whether a civilian employee attached to the armed forces of the United States stationed in a foreign country is subject to trial by court-martial for an offense connected with his activities.

The issue arises on a return to an order to show cause granted in response to a petition for a writ of *habeas corpus* filed by a prisoner confined at an Air Depot in Morocco, against the Secretary of Defense, the Secretary of the Air Force, and the Chief of Staff of the United States Air Force. The petitioner, Dominic Guagliardo, was employed by the Department of the Air Force as an electrical lineman at Nouasseur Air Depot, Morocco. On July 18, 1957, he was charged with larceny of Government property consisting of leatherette goods and olive drab fabric material, valued at about $4,690. In addition, he and two other persons were charged with conspiracy to commit larceny. He was tried and convicted by a general court-martial convened at the Air Depot and was sentenced to confinement at hard labor for three years and a fine of $1,000. The convening authority disapproved the finding of guilty on the first of the two charges, but approved the sentence as to the second charge. The petitioner is now a prisoner at the Base Stockade, at the above mentioned Air Depot in Morocco. The matter still remains to be considered by the Board of Review of the Office of the Judge Advocate General, as well as by the Judge Advocate General. If after going through these channels the sentence is approved, the petitioner will still have the right to petition the United States Court of Military Appeals for a review of any alleged error of law.

The petitioner has applied to this court for a writ of *habeas corpus* on the ground that he had been deprived of his constitutional rights to indictment by a grand jury and trial by jury. The respondents filed a return and answer setting forth the prior proceedings in detail and asserting that civilian employees who accompany or serve with the armed forces of the United States in the field are subject to trial by court-martial. A traverse to the return has been filed by counsel for the petitioner. The matter was heard on the petition, the return and the traverse.

*In limine* the respondents interposed the objection that the petitioner had not exhausted all the remedies available to him before military tribunals and that, therefore, this proceeding has been brought prematurely. This contention

would be completely sustained by Gusik v. Schilder, 340 U.S. 128, 71 S.Ct. 149, 95 L.Ed. 146, if that case stood alone. Subsequent decisions of the Supreme Court, however, throw a different light on this question.

The case of Toth is illuminating in this connection. Toth had served in the Air Force in Korea. After he was discharged from the service, he returned to his home in Pittsburgh, and resumed his civilian occupation. He was later arrested by the Air Force police and transported to Korea for trial by court-martial on a charge of murder alleged to have been committed while he was in the service. The District Court for the District of Columbia issued and sustained a writ of *habeas corpus,* and discharged Toth on the ground that the Uniform Code of Military Justice did not authorize the removal of a civilian to a distant point for trial by court-martial.[1] The court expressly stated that the objection to the jurisdiction of the court-martial to try Toth, based on constitutional grounds, was premature. The Court of Appeals for the District of Columbia Circuit reversed the order of the District Court.[2] On certiorari the Supreme Court reversed the decision of the Court of Appeals and reinstated the action of the District Court.[3] The Supreme Court, however, did not confine itself to passing on the narrow point on which the District Court predicated its decision, but held broadly that Congress lacked power to authorize trial by court-martial of a person in the position of Toth. This conclusion was reached in spite of the fact that Toth had made no effort to exhaust his remedies within the military system.

In Reid v. Covert, 354 U.S. 1, 4, 77 S.Ct. 1222, 1 L.Ed.2d 1148, the Supreme Court held that there was no constitutional authority to try the respondent by court-martial and directed that she be released from custody, in spite of the fact that she had not exhausted her remedies in the military system. As appears from the opinion of the court, a re-trial by court-martial as a result of a reversal of the conviction by the Court of Military Appeals was pending when the case was argued and decided by the Supreme Court. To be sure, it does not appear that the objection that there was a failure to exhaust prior remedies was urged by the Government in either of these cases. Nevertheless, it could have been raised by the Court *sua sponte.* It would not be appropriate for this court to assume that in spite of its decision in the Gusik case, supra, the Supreme Court overlooked the point in the Toth and Reid cases. That this matter was not mentioned in either opinion may be due merely to the fact that the Court did not consider it worthy of discussion. This court cannot reasonably reach any conclusion other than that the Gusik case has been overruled *sub silentio* by the Toth and Reid cases, insofar as it applies to the necessity of exhausting other available remedies in a case in which the jurisdiction of a court-martial is challenged on constitutional grounds. Consequently, the objection that the petitioner has failed to exhaust all of his remedies within the military system is overruled.

This brings us to a consideration of the merits. Jurisdiction of courts-martial over the person of the petitioner in this proceeding is predicated on Article 2 of the Uniform Code of Military Justice (formerly 50 U.S.C.A. § 552; now 10 U.S.C. § 802), the pertinent provisions of which are as follows:

"The following persons are subject to this chapter:

\* \* \* \* \* \*

"(11) Subject to any treaty or agreement to which the United States is or may be a party or to any accepted rule of international law, *persons serving with, employed by, or accompanying the armed forces outside the United States* and out-

---

1. Toth v. Talbott, D.C., 114 F.Supp. 468.

2. Talbott v. United States ex rel. Toth, 94 U.S.App.D.C. 28, 215 F.2d 22.

3. United States ex rel. Toth v. Quarles, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8.

side the following: that part of Alaska east of longitude 172 degrees west, the Canal Zone, the main group of the Hawaiian Islands, Puerto Rico, and the Virgin Islands." (Emphasis supplied.)

It is contended by the petitioner that subsection (11), insofar as it is applicable to civilians, is unconstitutional in that it deprives them of the right not be prosecuted for a criminal offense except by indictment by a grand jury, and of the right to trial by jury.

The pertinent constitutional provisions are the following:

Article I, Section 8, Clause 14:

"The Congress shall have Power * * * To make Rules for the Government and Regulation of the land and naval Forces."

Article III, Section 2, Clause 3:

"The Trial of all Crimes, except in Cases of Impeachment, shall be by Jury; and such Trial shall be held in the State where the said Crimes shall have been committed; but when not committed within any State, the Trial shall be at such Place or Places as the Congress may by Law have directed."

The Fifth Amendment, Clause 1:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, * * *."

The Sixth Amendment, Clause 1:

"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, * * *."

■■ It is well established beyond the necessity of discussion that the power of the Congress to make rules for the government and regulation of the land and naval forces includes the authority to provide for trials by courts-martial, and that in cases cognizable by military tribunals, neither the right to indictment by grand jury as a basis for a prosecution, nor the right to a trial by jury is applicable.[4] The ultimate question to be decided in connection with the resolution of the constitutional issue in this case is to what groups of persons may the Congress extend court-martial jurisdiction. More specifically the query is whether for the purposes of Article I, Section 8, Clause 14, the phrase, "land and naval Forces" is to be limited to commissioned and enlisted personnel in uniform, or whether it may include civilian employees who are attached to the land or naval forces and perform duties in connection with their maintenance or operation.

A consideration of this topic should properly begin with a scrutiny of the rulings of the Supreme Court in this field. In making such an analysis, we must be guided by the precepts enunciated by Chief Justice Marshall in Cohens v. Virginia, 6 Wheat. 264, 399–400, 5 L. Ed. 257:

"It is a maxim, not to be disregarded, that general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit, when the very point is presented for decision. The reason of this maxim is obvious. The question actually before the court is investigated with care, and considered in its full extent. Other principles which may serve to illustrate it, are considered in their relation to the case decided, but their possible bearing on all other cases is seldom completely investigated."

Our attention must be directed to two cases. In United States ex rel. Toth v.

4. Ex parte Milligan, 4 Wall. 2, 123, 18 L.Ed. 281; Ex parte Quirin, 317 U.S. 1, 40, 63 S.Ct. 1, 87 L.Ed. 3; Whelchel v. McDonald, 340 U.S. 122, 127, 71 S.Ct. 146, 95 L.Ed. 141.

Quarles, 350 U.S. 11, 76 S.Ct. 1, it was held that a former member of the armed forces who had been discharged from the service and was no longer within the control of the armed forces was not subject to trial by court-martial for an offense committed during his term of service.

Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148, involved the status of a wife of a member of the armed forces of the United States, who accompanied her husband while he was stationed on foreign soil. This case was heard and decided by eight members of the Supreme Court, as Mr. Justice Whittaker did not participate. Mr. Justice Black delivered an opinion in which the Chief Justice, Mr. Justice Douglas and Mr. Justice Brennan joined, and in which the view was expressed that civilian wives, children, and other dependents of members of the armed forces could not be constitutionally subjected to trial by court-martial, since they could not be regarded as any part of the armed forces. It must be emphasized that this conclusion was reached by only four members of the Court. Mr. Justice Frankfurter and Mr. Justice Harlan wrote separate opinions concurring in the result, but limiting their conclusion to the view that in capital cases civilian dependents of members of the armed forces could not be constitutionally tried by court-martial. Mr. Justice Clark, with whom Mr. Justice Burton joined, wrote a dissenting opinion. Consequently, the only point on which a majority of the Justices concurred is that in a capital case a civilian dependent of a member of the armed forces may not be tried by court-martial. Six Justices joined in that view.

 The state of the Supreme Court's decisions on this question may, therefore, be summarized as follows:

A former member of the armed forces, who has been discharged and is no longer within the control of the military, is not subject to trial by court-martial for an offense committed during his term of service.

A wife, a child, or other dependent of a member of the armed forces is not subject to trial by court-martial in a capital case.

The Supreme Court has not determined whether a dependent accompanying a service man is subject to trial by court-martial in a case other than capital.

Similarly, the Supreme Court has never had occasion to decide whether a civilian employee attached to the armed forces in a foreign country is subject to trial by court-martial.

Obviously, the position of civilian employees is not only different in fact, but distinct in principle from that of members of servicemen's families. The use of civilian employees is necessary and sometimes indispensable for the operation of the armed forces. To that extent they may be deemed part of the armed forces. This is not the case with families of servicemen. The families are present for the mutual comfort and happiness of the military personnel and their wives and children, but the armed forces can readily operate without the presence of families.

Mr. Justice Black in Reid v. Covert, supra, 354 U.S. at page 23, 77 S.Ct. at page 1233, expressly recognized that "there might be circumstances where a person could be 'in' the armed services for purposes of Clause 14 even though he had not formally been inducted into the military or did not wear a uniform." He added, "But the wives, children and other dependents of servicemen cannot be placed in that category, * * *." Thus, members of the Supreme Court have recognized a distinction in principle between dependents of servicemen and civilian employees of the armed forces.

In determining whether the words "land and naval Forces" as used in Article I, Section 8, Clause 14, of the Constitution are to be restricted to the uni-

formed personnel formally mustered into the service, or should also include civilian employees attached to the armed forces, it is necessary to consider the background of the constitutional provision.[5] It is also essential to bear in mind certain general historic principles of constitutional interpretation and construction. The constitutional history of the United States demonstrates that one of the forces that transformed a weak, loose confederacy of thirteen small colonies nestled against the Atlantic Coast into a large, powerful and prosperous nation, has been the fact that a broad and liberal construction has been placed by the Supreme Court on the enumerated powers of the Congress, thus enabling the building of a strong central government that can withstand the vicissitudes of time. This policy was inaugurated by the historic, epoch-making opinions of Chief Justice Marshall, who was an outstanding statesman, endowed with far-sighted vision, as well as a renowned jurist. It would seem surplusage to quote his memorable words in McCulloch v. State of Maryland, 4 Wheat. 316, 4 L. Ed. 579, that ring through the ages. They are often repeated and are all too familiar.

A similar but less well known expression is found in an opinion of Justice Story in Martin v. Hunter's Lessee, 1 Wheat. 304, 326–327, 4 L.Ed. 97:

"The constitution unavoidably deals in general language. It did not suit the purposes of the people, in framing this great charter of our liberties, to provide for minute specifications of its powers, or to declare the means by which those powers should be carried into execution. It was foreseen, that this would be perilous and difficult, if not an impracticable, task. The instru-

ment was not intended to provide merely for the exigencies of a few years, but was to endure through a long lapse of ages, the events of which were locked up in the inscrutable purposes of Providence. It could not be foreseen, what new changes and modifications of power might be indispensable to effectuate the general objects of the charter; and restrictions and specifications, which, at the present, might seem salutary, might, in the end, prove the overthrow of the system itself. Hence, its powers are expressed in general terms, leaving to the legislature, from time to time, to adopt its own means to effectuate legitimate objects, and to mould and model the exercise of its powers, as its own wisdom, and the public interests should require." [6]

The historic background of Clause 14 is significant. It is hardly necessary to advert to the fact that the framers of the Constitution were men of profound learning, but that they were also men of broad practical experience, who were in close contact with the problems of their day and who had a thorough knowledge of the needs in the light of which the Constitution was being framed. The British Articles of War of 1765, which were in force at the beginning of the Revolutionary War, placed civilian employees, contractors and suppliers connected with the Army under military discipline. Thus Article XXIII provided: [7]

"All Suttlers and Retainers to a Camp, and all persons whatsoever serving with Our Armies in the Field, though no inlisted Soldiers, are to be subject to orders, according to the Rules and Discipline of War."

5. Gompers v. United States, 233 U.S. 604, 610, 34 S.Ct. 693, 58 L.Ed. 1115.

6. Among the many cases expressing and applying the doctrine of broad construction of congressional powers, the following are typical: Gibbons v. Ogden, 9 Wheat. 1, 187–189, 222, 6 L.Ed. 23; Legal Tender Cases, 12 Wall. 457, 532, 20 L.Ed. 287; Juilliard v. Greenman, 110 U.S. 421, 439, 28 L.Ed. 204; Matter of Strauss, 197 U.S. 324, 330–331, 49 L.Ed. 774.

7. William Winthrop, Military Law and Precedents, 2d Ed., p. 941.

The American Revolutionary Army was governed by similar provisions. Article XXXII of the Articles of War, adopted by the Continental Congress, on June 30, 1775, read as follows:[8]

"All suttlers and retailers to a camp, and all persons whatsoever, serving with the continental army in the field, though not inlisted soldiers, are to be subject to the articles, rules, and regulations of the continental army."

A like enactment is found in Section XIII, Article 23, of the Articles of War, adopted by the Continental Congress on September 20, 1776:[9]

"All suttlers and retainers to a camp, and all persons whatsoever serving with the armies of the United States in the field, though no inlisted soldier, are to be subject to orders, according to the rules and discipline of war."

 It was against this background that the members of the Constitutional Convention of 1787 formulated the provision empowering the Congress to make rules and regulations for the government of the land and naval forces of the United States. It is reasonable to infer that the framers of the Constitution were familiar with previous English and American usage in the matter and, therefore, employed the term "land and naval Forces" in a broad sense. Such has also been the continuous construction of this phrase by the Congress from the early days of the Republic. Early congressional interpretation of a constitutional provision at a time when some of the Founding Fathers were still living and active is particularly significant. Great weight must be attached to such contemporaneous construction.[10] Similarly, continuous construction of a constitutional provision by repeated Acts of Congress and long acquiescence in such an interpretation "entitles the question to be considered at rest".[11]

The Articles of War enacted by Congress from time to time have invariably applied court-martial jurisdiction to civilian employees and similar persons attached to the armed forces in the field. The first group of Articles of War passed by the Congress were approved on April 10, 1806. Article 60 provided as follows:[12]

"Article 60. All suttlers and retainers to the camp, and all persons whatsoever, serving with the armies of the United States in the field, though not enlisted soldiers, are to be subject to orders, according to the rules and discipline of war."

The Articles of War were revised in 1874. Article 63 of that revision reads as follows:[13]

"Art. 63. All retainers to the camp, and all persons serving with the armies of the United States in the field, though not enlisted soldiers, are to be subject to orders, according to the rules and discipline of war."

Another revision of the Articles of War was dated August 29, 1916. Article 2 enumerates the groups of persons

---

8. Journals of the Continental Congress, Volume II, 1775, p. 116.

9. Journals of the Continental Congress, Volume V, 1776, p. 800.

10. Cohens v. Virginia, 6 Wheat. 264, 418, 5 L.Ed. 257; Cooley v. Board of Wardens of Port of Philadelphia, 12 How. 299, 315, 13 L.Ed. 996; Burrow-Giles Lithographic Co. v. Sarony, 111 U.S. 53, 57, 4 S.Ct. 279, 28 L.Ed. 349; McPherson v. Blacker, 146 U.S. 1, 27, 13 S.Ct. 3, 36 L.Ed. 869; Knowlton v. Moore, 178 U.S. 41, 56, 20 S.Ct. 747, 44 L.Ed. 969.

11. Prigg v. Commonwealth of Pennsylvania, 16 Pet. 539, 621, 10 L.Ed. 1060; See also, The Laura, 114 U.S. 411, 416, 5 S.Ct. 881, 29 L.Ed. 147; Springer v. United States, 102 U.S. 586, 599, 26 L.Ed. 253; Field v. Clark, 143 U.S. 649, 691, 12 S.Ct. 495, 36 L.Ed. 294.

12. 2 Stat. 366.

13. 2 Rev.Stat. 236 (2d Ed., 1878).

subject to military law, and includes the following: [14]

"(d) All retainers to the camp and all persons accompanying or serving with the armies of the United States without the territorial jurisdiction of the United States, and in time of war all such retainers and persons accompanying or serving with the armies of the United States in the field, both within and without the territorial jurisdiction of the United States, though not otherwise subject to these articles; * * *."

Precisely the same provision is found in the Articles of War passed in 1920.[15] The Uniform Code of Military Justice, adopted in 1952, contains a similar provision, which has been heretofore quoted.

Although, as indicated above, the precise question involved in the instant case has never been passed upon by the Supreme Court, other Federal courts that have had occasion to deal with this topic have uniformly held that civilian employees accompanying or serving with the armed forces of the United States outside of the territorial jurisdiction of the United States may be subjected to court-martial jurisdiction, Hines v. Mikell, 4 Cir., 259 F. 28; Ex parte Falls, D.C.D.N.J., 251 F. 415; Ex parte Jochen, D.C.S.D.Tex., 257 F. 200; McCune v. Kilpatrick, D.C., 53 F.Supp. 80; In re Varney's Petition, D.C., 141 F. Supp. 190. The United States Court of Military Appeals has reached the same conclusion, United States v. Marker, 1 U.S.C.M.A. 393; United States v. Weiman, 3 U.S.C.M.A. 216; United States v. Burney, 6 U.S.C.M.A. 776.[16]

The final clause of Article I, Section 8, of the Constitution sometimes denominated by historians as the "elastic clause", empowers the Congress to make all laws which shall be necessary and proper for carrying into execution "the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." That a law subjecting personnel of the type involved in this case to trial by court-martial is necessary and proper for carrying into execution the power to make rules for the government and regulation of the land and naval forces, is demonstrated by a consideration of the consequences of any conclusion that would deny this authority to the Congress. It is manifestly essential to enforce law and order at stations maintained by the armed forces of the United States in foreign countries. The use of civilian employees is frequently indispensable in connection with the operation of these stations. If court-martial jurisdiction may not be exercised in respect to such civilians, other means of law enforcement would create difficulties that in some instances might prove insuperable. One possible course is to establish Federal civilian courts abroad for the trial of offenses committed by civilian employees of the armed forces. Whether foreign governments would permit the exercise of such extra-territorial jurisdiction is doubtful. It has never been done in modern times except in occupied territory and except in the Orient by special agreements, which have been cast into discard. Moreover, it would not be practicable to obtain juries in foreign countries, for no one could be required to serve on a jury. Similarly, it would not be possible to issue compulsory process against witnesses.

Another possibility would be to bring such offenders back to the United States for trial. Such an arrangement would not be practicable as to serious offenses, for there would be no way of compelling the presence of witnesses. They could be induced to come only on a voluntary basis. As to petty offenses, this course would be too costly and cumbersome.

14. 39 Stat. 651.

15. 41 Stat. 787, Art. 2(d).

16. The opinion of Judge Latimer in United States v. Burney cited in the text, contains an exhaustive and scholarly discussion of this subject.

The third possible course is to turn such offenders over to foreign courts for trial.[17]

■■ In the light of the foregoing discussion, the court reaches the conclusion that civilian employees attached to the armed forces of the United States abroad may be subjected to trial by court-martial and that hence Article 2, subsection (11) of the Uniform Code of Military Justice is constitutional; that the court-martial by which the petitioner was tried had jurisdiction over him; and that, consequently, the petitioner is not unlawfully restrained of his liberty.

The order to show cause is discharged and the petition is dismissed.

17. See concurring opinion of Mr. Justice Harlan in Reid v. Covert, 354 U.S. 1, at page 76, note 12, 77 S.Ct. 1222; at page 1261.

Joseph M. Snee, S. J., and Kenneth A. Pye, in their work on "Status of Forces Agreement; Criminal Jurisdiction", p. 44, state that the fundamental choice is not between a Federal civilian court and an American court-martial, but between an American court-martial and a foreign court.