**Albert H. GRISHAM, Petitioner,**

v.

**John C. TAYLOR, Warden of U. S. Penitentiary at Lewisburg, Pennsylvania, Respondent.**

No. 330.

United States District Court
M. D. Pennsylvania.
April 22, 1958.

Charles Wolfe Kalp, Lewisburg, Pa., for petitioner.

Robert J. Hourigan, U. S. Atty., Scranton, Pa., Lt. Col. Peter S. Wondolowski, Lt. Col. Cecil L. Forinash, The Judge Advocate General's Corps, United States Army, Washington, D. C., for respondent.

FOLLMER, District Judge.

This habeas corpus proceeding poses the question as to whether a civilian employee attached to the armed forces of the United States stationed in a foreign country is subject to trial by court-martial for a capital offense.

The issue arises on a return and answer to a rule to show cause granted in response to a petition for a writ of habeas corpus filed by petitioner, a prisoner confined at the United States Penitentiary at Lewisburg, Pennsylvania, against the Warden of the Penitentiary.

The record of the court-martial was introduced into evidence.

The petitioner, Albert H. Grisham, a Department of the Army civilian employee assigned to the Corps of Engineers, United States Army, Nashville District, Nashville, Tennessee, arrived in France on October 1, 1952 and was assigned for temporary duty with the Orleans District Engineer Office Headquarters USA REUR Communications Zone, Orleans, France. On November 1, 1952 he was joined by his wife, Dolly Dimples Grisham, and they established residence at 74 Boulevard Alexander Martin in Orleans, France.

On the evening of December 6, 1952, petitioner and his wife attended a cocktail party, where both became somewhat intoxicated. Mrs. Grisham was last seen alive by witnesses other than her husband, returning home with her husband, the petitioner, at about 9:45 o'clock that evening. The following morning she was found lying dead, in her bed. Her head, face and body were bloody, bruised and battered. An autopsy revealed that the cause of her death was "severe hemorrhage in the chest wall and in the abdomen and tissues of the body."

Petitioner was arrested by the French authorities. On December 23, 1952, France waived jurisdiction over the petitioner and the offense and released the petitioner to the jurisdiction of the American Military Authorities. Petitioner was subsequently tried by a United States Army General Court-Martial between March 20 and 27, 1952, for the premeditated murder of his wife, in violation of Article 118, Uniform Code of Military Justice (10 U.S.C. § 918). At the trial the petitioner objected to his trial by general court-martial on the ground that the court-martial lacked jurisdiction over his person and the offense charged. Petitioner contended that exclusive jurisdiction over the offense upon which he was arraigned was vested in France and was punishable only under French law. The general court-martial denied the motion to dismiss the charge and specification on the ground of lack of jurisdiction. Petitioner remained mute at the time of arraignment and a plea of not guilty was entered on his behalf by the law officer. Petitioner was found not guilty of premeditated murder but guilty of the lesser and included offense of unpremeditated murder in violation of Article 118, Uniform Code of Military Justice (10 U.S.C. § 918), and was sentenced by the court-martial to be confined at hard labor for the term of his natural life. The sentence was subsequently reduced by clemency action to thirty-five years.

The alleged authority for the jurisdiction of the general court-martial which tried petitioner is Article 2(11) of the Uniform Code of Military Justice (64 Stat. 107, 109), 10 U.S.C. § 802(11), which provides:

"The following persons are subject to this code:

\* \* \* \* \* \*

"(11) Subject to the provisions of any treaty or agreement to which the United States is or may be a party or to any accepted rule of international law, all persons serving with, employed by, or accompanying the armed forces without the continental limits of the United States \* \* \*."

It is the contention of the petitioner that the court-martial was without jurisdiction because Article 2 (11) of the Uniform Code of Military Justice was unconstitutional in so far as it authorized the trial by court-martial of this petitioner admittedly a civilian employee of the United States Army, and that as a civilian he had been deprived of his constitutional rights to indictment by a grand jury and trial by jury.

In United States of America ex rel. Dominic Guagliardo v. McElroy, D.C. D.C., 158 F.Supp. 171, a habeas corpus proceeding, Judge Holtzhoff concluded that civilian employees attached to the armed forces of the United States abroad may be subjected to trial by court-martial and that Article 2, subsection (11) of the Uniform Code of Military Justice is constitutional; that the court-martial by which the petitioner was tried had jurisdiction over him; that the petitioner was not unlawfully restrained of his liberty, and dismissed the petition. The petitioner there was employed by the Department of the Air Force as an electrical lineman at Nouasseur Air Depot, Morocco. He was charged with larceny of Government property and in addition, with two other persons, he was charged with conspiracy to commit larceny. He was tried and convicted by a general court-martial at the Air Depot and sentenced. The convening authority disapproved the finding of guilty on the

first of the two charges, but approved the sentence on the second charge.

As in the instant case, the court's attention in the Guagliardo case was directed to United States ex rel. Toth v. Quarles, Secretary of the Air Force, 350 U.S. 11, 76 S.Ct. 1, 100 L.Ed. 8, and Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148. In the Toth case it was held that a former member of the armed forces who had been discharged from the service and was no longer under the control of the armed forces was not subject to trial by court-martial for an offense committed during his term of service.

The Covert case involved the status of a wife of a member of the armed forces of the United States, who accompanied her husband while he was stationed on foreign soil and who killed her husband. The case was heard and decided by eight members of the Supreme Court as Mr. Justice Whittaker did not participate. Mr. Justice Black delivered an opinion in which the Chief Justice, Mr. Justice Douglas and Mr. Justice Brennan joined. This opinion held in effect that civilian wives, children, and other dependents of members of the armed forces could not be constitutionally subjected to trial by court-martial since they could not be regarded as any part of the armed forces. Mr. Justice Frankfurter and Mr. Justice Harlan wrote separate opinions concurring in the result but limiting their conclusion to the view that in capital cases civilian dependents of members of the armed forces could not be constitutionally tried by court-martial. Mr. Justice Clark, with whom Mr. Justice Burton joined, wrote a dissenting opinion. As indicated by Judge Holtzoff, the only point on which a majority of the justices concurred is that in a capital case a civilian dependent of a member of the armed forces may not be tried by court-martial.

Judge Holtzoff then summarizes the present state of the Supreme Court's decisions on the question as follows [158 F. Supp. 175]:

"A former member of the armed forces, who has been discharged and is no longer within the control of the military, is not subject to trial by court-martial for an offense committed during his term of service. (Toth)

"A wife, a child, or other dependent of a member of the armed forces is not subject to trial by court-martial in a capital case. (Covert)

"The Supreme Court has not determined whether a dependent accompanying a service man is subject to trial by court-martial in a case other than capital.

"Similarly, the Supreme Court has never had occasion to decide whether a civilian employee attached to the armed forces in a foreign country is subject to trial by court-martial."

The instant case therefore seems to provide the necessary factual base for a determination on one of the two above mentioned remaining facets of this perplexing constitutional question involving courts-martial.[1]

In the light of the exhaustive coverage given this matter by the four opinions in Covert, the opinion in Guagliardo, and the opinion of Judge Latimer in United States v. Burney, 6 U.S.C.M.A. 776 (referred to in Guagliardo), it would seem that any further critical analysis of the authorities here would be mere supererogation.

The evidence in this case clearly shows that this petitioner killed his wife in a most inhuman and sadistically brutal fashion. I fully realize that this characterization of the crime involved is not in any sense determinative of the ques-

---

1. Mr. Justice Frankfurter in Reid v. Covert, 354 U.S. 1, 45, 77 S.Ct. 1222, 1245, said, inter alia:

"* * * The Court has not before it, and therefore I need not intimate any opinion on, situations involving civilians, in the sense of persons not having a military status, other than dependents. * * *"

tion involved. Murder is murder and whether it is done with the savagery of a Hun or the finesse of a storybook thriller is of no consequence.

Final termination of a state of war with the Axis powers was effected April 28, 1952. While it is true the Korean conflict began in June 1950 and ended in July 1953 (United States v. Shell, 7 U.S.C.M.A. 646, 23 C.M.R. 110) and the Korean conflict has been held to constitute a state of war for the purpose of the administration of military justice (United States v. Bancroft, 3 U.S.C.M.A. 3, 11 C.M.R. 3; United States v. Gann, 3 U.S. C.M.A. 12, 11 C.M.R. 12; United States v. Ayers, 4 U.S.C.M.A. 220, 15 C.M.R. 220; United States v. Taylor, 4 U.S.C. M.A. 232, 15 C.M.R. 232), the fact remains the offense involved here did not take place at or near a field during time of war or in the face of an actively hostile enemy or in an area where actual hostilities were under way.

In Covert, supra (354 U.S. at pages 22, 23, 77 S.Ct. at page 1233) Mr. Justice Black stated:

"* * * We recognize that there might be circumstances where a person could be 'in' the armed services for purposes of Clause 14 even though he had not formally been inducted into the military or did not wear a uniform. * * *"

It may well be argued that there is not the urgency for strict military discipline at a time and in an area of peace as in a hostile area. Certainly, it would seem that the army is still charged with a heavy responsibility in connection with the conduct and behavior of its personnel, army and civilian, while on foreign soil and whether in war or in peace.

In the light of the divergent opinions in Covert and the self-defeating alternatives, enumerated and evaluated by Mr. Justice Harlan in Covert (Note 12, Page 76), I conclude, paraphrasing Mr. Justice Black, Covert supra, that this is a circumstance where petitioner was in the armed services for purposes of Clause 14 even though he had not been formally inducted into the military and did not wear a uniform.

█ I further conclude, in the light of the above observations, that civilian employees attached to the armed forces of the United States abroad may be subjected to trial by court-martial, even in capital cases, and that Article 2, subsection (11) of the Uniform Code of Military Justice in so far as it relates to the facts of the instant case is constitutional; that the court-martial by which petitioner was tried had jurisdiction over him and that, consequently, the petitioner is not unlawfully restrained of his liberty.

The Rule to Show Cause will be discharged and the petition for a Writ of Habeas Corpus will be denied.