**Albert H. GRISHAM, Appellant,**

v.

**John C. TAYLOR, Warden of United States Penitentiary at Lewisburg, Pennsylvania.**

**No. 12630.**

United States Court of Appeals
Third Circuit.

Argued Oct. 24, 1958.

Decided Nov. 20, 1958.

Charles Wolfe Kalp, Lewisburg, Pa., for appellant.

Peter Stanislaus Wondolowski, Washington, D. C. (Daniel H. Jenkins, U. S. Atty., Scranton, Pa., on the brief), for appellee.

Before GOODRICH, McLAUGHLIN and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

This is an appeal from a district court decision denying the petitioner habeas corpus, D.C.M.D.1958, 161 F.Supp. 112. Albert H. Grisham was a civilian accountant employed by and serving with the United States Army in France. While assigned overseas Grisham and his wife resided in a rented apartment in Orleans. Grisham was arrested by French officials as a result of the death of his wife in December, 1952. At the re-

quest of the Army he was turned over to military authorities and was charged by them with the premeditated murder of his wife, a capital offense. 10 U.S.C. § 918 (Supp. V, 1958). He was tried by a court-martial and convicted of unpremeditated homicide. Having been sentenced to prison, he now seeks release on habeas corpus proceedings.

██ The foundation of this petition is the Supreme Court's decision in Reid v. Covert, 1957, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148. Our difficulty in this case is to make up our minds how far Reid v. Covert takes us. One thing is clear. Under that decision the wife of a man in military service who accompanies her husband abroad cannot in peacetime be tried in a foreign country by a United States military court-martial for a capital crime. But the opinion by Mr. Justice Black was joined by only three of his colleagues. Two others, Mr. Justice Frankfurter and Mr. Justice Harlan, rendered separate concurring opinions and two, Mr. Justice Clark joined by Mr. Justice Burton, dissented.[1]

The district court, disposing of the instant case, relied largely on Judge Holtzoff's opinion in United States ex rel. Guagliardo v. McElroy, D.C.D.C.1958, 158 F.Supp. 171. But that decision was overruled by the Court of Appeals for the District of Columbia Circuit by a divided court (2–1). 259 F.2d 927. Guagliardo involved the same statute as that in the Covert case. It is article 2 (11) of the Uniform Code of Military Justice, 10 U.S.C. § 802(11) (Supp. V, 1958), which reads as follows:

"(11) Subject to any treaty or agreement to which the United States is or may be a party or to any accepted rule of international law, persons serving with, employed by, or accompanying the armed forces outside the United States. * * *"

are subject to the authority of the courts-martial described by the statute.

In the Guagliardo case the petitioner was a civil service employee of the Air Force. The crime with which he was charged was not a capital crime but larceny. The District of Columbia Circuit Court said that it was not going to decide any constitutional question: that since the Supreme Court had said the section of the Military Justice Code when applied to persons "accompanying the armed forces" [158 F.Supp. 173] was unconstitutional the whole clause fell.

With due deference to a very competent court, we cannot join in this ground for granting a habeas corpus writ. The statute in question expressly contains a reservation clause providing:

"If a part of this Act is invalid, all valid parts that are severable from the invalid part remain in effect. If a part of this Act is invalid in one or more of its applications, the part remains in effect in all valid applications that are severable from the invalid applications." Pub.L.No. 1028, 84th Cong., 2d Sess., 70A Stat. 640 (Aug. 10, 1956), § 49(d).

We think this provision controls, and that we must look to see whether a difference may not exist as to persons "serving with" or "employed by" from those "accompanying" the armed forces.

Granted that authority compels the conclusion that a wife accompanying her husband abroad is not to be tried by court-martial, it does not follow that persons "serving with" or "employed by" the armed forces may not be so tried. At least it does not so follow until the Supreme Court says that it does. We do not get helpful authority, then, from the Guagliardo opinion except for a reason we cannot share.

So we are confronted with the problem of the application of the Covert case to a civilian employee of the armed forces serving abroad, prosecuted for a capital offense in peacetime and tried by court-martial. Grisham was charged in France with premeditated murder, a capital offense. The conviction was for un-

1. Mr. Justice Whittaker took no part in the consideration or decision of the case.

premeditated murder which is not a capital offense.

The question involved is one which we think it is fair to say was left open by the language of Mr. Justice Black's opinion in the Covert case. On page 22 of 354 U.S., on page 1233 of 77 S.Ct. he says:

"Even if it were possible, we need not attempt here to precisely define the boundary between 'civilians' and members of the 'land and naval Forces.' We recognize that there might be circumstances where a person could be 'in' the armed services for purposes of Clause 14 even though he had not formally been inducted into the military or did not wear a uniform."

We do not make this quotation to prove that Mr. Justice Black concluded there was a difference; only to show that the possibility was in his mind and no commitment on the point made.

We think that this civilian Army employee presents a different case from that of a soldier's wife and that the weight of consideration tends to support the argument for permitting Congress to subject him to the jurisdiction of the Courts-Martial as the statute provides.[2] The fact that civilian personnel accompanying armed forces have, for a long time, apparently been treated as subject to discipline by military authorities is a factor supporting this conclusion.[3] This is not conclusive, of course. But things which have long been established practice run less danger of being called unconstitutional than do innovations. See, for instance, Ownbey v. Morgan, 1921, 256 U.S. 94, 112, 41 S.Ct. 433, 65 L.Ed. 837; Anderson National Bank v. Luckett,

1944, 321 U.S. 233, 244, 64 S.Ct. 599, 88 L.Ed. 692.

There is the practical point. An army can and for years has gone along without wives accompanying it. But civilian employees are essential to the hundreds of things which an army now has to do in addition to fighting. The practical difficulties involved in denying to Courts-Martial jurisdiction over offenses by such people are set out by Mr. Justice Harlan in footnote 12 on page 76 of 354 U.S. on page 1261 of 77 S.Ct.[4]

Furthermore, these civilian employees are associating with the Army through their own volition. The soldier may have no choice as to whether he is in the Army or not. Once in, he has no choice about leaving his employment until his term expires. But the civilian can work for the Army or not as he pleases; he can decline to work further if he is told to go where he does not want to go. We think that by voluntarily associating himself with the armed forces it is not unreasonable to put him under the same discipline which members of those forces are under.

Grisham was not living on the Army base at the time of the alleged offense. But he was eligible to receive many privileges which the soldiers got. He could buy goods at the commissary; he could get medical and dental care; he had the benefit of the special armed services postal facilities, special customs privileges, etc. We think, therefore, that the fact that he did not live on the Army base is a matter of no significance.

In other words, Grisham was in the position of the person described by Mr. Justice Black and quoted above. He had not been formally inducted, he did not

---

2. The Constitutional source of Congressional authority is Art. I, § 8, cl. 14: "The Congress shall have Power * * * To make Rules for the Government and Regulation of the land and naval Forces."

3. The Government cites to us authority going back a long time to show that civilians attached to the armed forces have been subjected to military jurisdic-

tion in time of peace. Unfortunately we do not have access to the material cited, some of which is said to be in the National Archives.

4. See Note, Criminal Jurisdiction Over Civilians Accompanying American Armed Forces Overseas, 71 Harv.L.Rev. 712 (1958).

wear a uniform, but he was as closely connected with the Army as though he had.

We are advised by counsel for the respondent that appeal has been taken in one case involving a similar problem[5] and that certiorari is to be asked for in the District of Columbia case. If the view we have expressed is incorrect there will be opportunity for its correction when the Supreme Court has spoken.

The judgment of the district court will be affirmed.

---

5. United States ex rel. Singleton v. Kinsella, D.C.S.D.W.Va.1958, 164 F.Supp. 707 (noncapital offense by a dependent wife accompanying her service husband over-seas in Germany). Direct appeal to the Supreme Court is available under 28 U.S.C. § 1252 (1952).