**Albert H. GRISHAM**

v.

**The UNITED STATES.**

No. 363–62.

United States Court of Claims.
April 19, 1968.

Lawrence J. Simmons, Washington, D. C., attorney of record, for plaintiff. H. Clay Espey, Washington, D. C., and Charles W. Kalp, of counsel.

Edgar H. Twine, Washington, D. C., with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, REED, Justice (Ret.) sitting by designation, and LARAMORE, DURFEE, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

LARAMORE, Judge.*

Plaintiff, Albert H. Grisham, a former civilian employee of the Corps of Engineers, Department of the Army, sues to recover his salary (and other benefits) for the period beginning December 7, 1952 and continuing thereafter.[1]

Plaintiff began his career as a civilian employee of the Corps of Engineers on October 26, 1936, when he received a probational appointment as a junior clerk (CAF–2) in the Nashville District. Having successfully completed his probationary period of service, he acquired permanent status in the competitive civil

---

\* We are indebted to Trial Commissioner Mastin G. White for his opinion, findings of fact and recommended conclusion of law submitted pursuant to the order of reference and Rule 57(a). We have adopted much of what the commissioner has written and arrive at the same result for different reasons.

1. Plaintiff has withdrawn any claim for pay since he was released from prison on February 5, 1960 and from December 7, 1952 to February 23, 1953 when he was on annual leave status for which he was paid. Therefore, plaintiff's claim is for pay from February 24, 1953 to the date he was released from prison, i. e., February 5, 1960.

service. Plaintiff continued to serve in the Nashville District until September 30, 1952 (except for a period of active military duty during World War II), and was regarded as a reliable and trustworthy employee. Plaintiff's proficient and capable performance of his assigned duties earned him gradual promotions. On September 30, 1952, he held a position as cost accountant (GS–9) in the Nashville District.

In September 1952, plaintiff was selected for a 6-month temporary duty assignment with the Orleans District Engineers in France. This organization was part of the military command known as the Communications Zone of the United States Army in Europe. He left the Nashville District for the foreign assignment on September 30, 1952. During his absence, the Nashville District employed a person on a temporary basis, for six months, to perform the work previously done by plaintiff, and thereafter it hired a permanent employee.

Following his departure for the temporary foreign assignment, he remained on the rolls of the Nashville District in the GS–9 position to which he had been promoted. The records of the Nashville District showed plaintiff had been loaned to the Orleans District Engineers for six months and was on temporary duty with that organization. Plaintiff arrived in France on October 1, 1952, then went to Orleans and undertook the temporary duty assignment for which he had been sent overseas. Plaintiff's wife, Dolly D. Grisham, did not accompany him to France. She arrived there on or about November 1, 1952, at which time they set up housekeeping in Orleans.

Dolly G. Grisham died on December 6, 1952. Plaintiff was arrested, charged with homicide and held in confinement by the French authorities from December 6 until December 24, 1952.

The United States Army requested jurisdiction over plaintiff, and the French authorities released him to the Army on December 24, 1952. Plaintiff was confined by the Army in the post stockdale at La Rochelle, France, and notified that he had been charged with premeditated murder under Article 118(1) of the Uniform Code of Military Justice (10 U.S.C. § 918(1) (Supp. IV, 1952)).[2]

While in confinement at La Rochelle awaiting the disposition of the charge against him, plaintiff requested the Corps of Engineers to pay him for his annual leave and then carry him in the status of leave without pay until the situation was clarified.

Plaintiff was placed in a leave-with-pay status by the Corps of Engineers retroactive to December 6, 1952. On the basis of the accrued annual leave to his credit, plaintiff was paid his salary for the period from December 6, 1952 through February 23, 1953.

When plaintiff's accrued leave was exhausted, the Nashville District placed him in the status of leave without pay as of February 24, 1953, "pending review of Court Martial Sentence." He was carried in a leave-without-pay status through February 28, 1954.

Plaintiff was brought to trial on March 20, 1953, at Orleans, France, before a general court-martial appointed by Headquarters, USAREUR Communications Zone, United States Army. He was court-martialed under the authority of Article 2(11) of the Uniform Code of Military Justice (10 U.S.C. § 802(11) (Supp. IV, 1952)).[3]

---

2. "§ 918. Art. 118. Murder.
  "Any person subject to this chapter who, without justification or excuse, unlawfully kills a human being, when he—
  "(1) has a premeditated design to kill;
* * *."

3. "§ 802. Art. 2. Persons subject to this chapter.
  "The following persons are subject to this chapter:
  *     *     *     *     *
  "(11) * * * [P]ersons serving with, employed by, or accompanying the armed forces outside the United States * * *."

The specification of the charge (a violation of Article 118 of the Uniform Code of Military Justice (10 U.S.C. § 918)) alleged that:

\* \* \* Albert H. Grisham, European Command, US Army, Orleans District Engineers, a person employed by the US Army and serving with the US Army outside the continental limits of the United States, did, at Orleans, France, on or about 6 December 1952, with premeditation, murder Dolly D. Grisham by means of striking her on the head and body with a bottle, striking her on the head and body with his fist, and kicking her on the head and body with his foot.

When arraigned before the court-martial, plaintiff stood mute. The court-martial entered a plea of "Not Guilty" on his behalf.

The trial continued from March 20 until March 27, 1953. Plaintiff was found "Guilty" of the specification, except for the words "with premeditation" and "striking her on the head and body with a bottle," there having been a finding of "Not Guilty" relative to the excepted words. The court-martial sentenced him to confinement at hard labor for the term of his natural life.

Plaintiff's conviction was reviewed by the appointing authority, and the findings and sentence were approved on July 8, 1953. Subsequently, the findings and sentence were affirmed by a Board of Review in the Office of the Judge Advocate General of the Army, and by the Court of Military Appeals.

In late July or early August of 1953, plaintiff was transferred to the United States Penitentiary at Lewisburg, Pennsylvania, where he was confined for the next six and one-half years. In 1957, his sentence was reduced by the Secretary of the Army from confinement for life to confinement for 35 years.

On February 26, 1954, the Nashville District prepared a Notification of Personnel Action (Standard Form 50) addressed to the plaintiff. The Notification stated as follows:

Your separation for notorious misconduct will be effected at the close of business 28 February 1954.

This action is taken after your continued leave without pay since 24 February 1953, pending Court Martial Sentence, and your subsequent life sentence to Federal Prison for criminal action.

As indicated by this document, plaintiff was removed from his position as a cost accountant, GS–9, with the Nashville District effective at the close of business on February 28, 1954. Plaintiff never received the Notification which, admittedly, was mailed to him. An informal letter mailed to plaintiff on October 11, 1957, by an acquaintance in the Nashville District Office, advised him of his removal.

Following the second decision by the United States Supreme Court in the case of Reid v. Covert, 354 U.S. 1, 77 S.Ct. 1222, 1 L.Ed.2d 1148 (1957), plaintiff, on October 26, 1957, filed a petition for a writ of habeas corpus in the United States District Court for the Middle District of Pennsylvania. The petition (alleging that the general court-martial lacked jurisdiction over a civilian employee prosecuted for a capital offense in peacetime) was denied (Grisham v. Taylor, 161 F.Supp. 112 (M.D.Pa.1958)), and the denial was affirmed on appeal (Grisham v. Taylor, 261 F.2d 204 (3d Cir. 1958)). The Supreme Court in Grisham v. Hagan, 361 U.S. 278, 80 S.Ct. 310, 4 L.Ed.2d 279 (1960), held that the attempt to apply the Uniform Code of Military Justice to the present plaintiff, a civilian employee serving with the Armed Forces outside the United States, was unconstitutional as violative of Article III and the Fifth and Sixth Amendments. This meant that the plaintiff's court-martial conviction was a nullity and wholly void. Mallow v. United States, 161 Ct.Cl. 446, 450 (1963). Plaintiff was released from the United States Penitentiary at Lewisburg, Pennsylvania, on February 5, 1960. Plaintiff's application, filed on June 9, 1961, with the Army Board for Correction of Military Records, was denied on July 27,

1961, without a hearing, and suit in this court was filed November 15, 1962.

Defendant by way of answer has asserted four affirmative defenses, the fourth of which is the defense of laches. We think plaintiff cannot recover by reason of that defense.

■ A discharged employee is bound to assert his rights with diligence. Delays by the employee in taking steps to test the legality of his removal may prevent the consideration of his suit on the merits. See: Alpert v. United States, 161 Ct.Cl. 810 at pages 820–821 (1963) and cases cited therein.

Assuming for purposes of this case that the letter dated October 11, 1957, from an employee of the Nashville District Corps of Engineers, was the first information plaintiff had of his February 5, 1954 removal (finding 26) and under plaintiff's theory that this was his first opportunity to sue in this court, he did not file suit until November 15, 1962, slightly more than five years thereafter.

■ Plaintiff has stipulated herein that subsequent to his incarceration, and from 1957 to the present, the government has been paying someone else the salary, part of which plaintiff seeks in this suit. This court has recognized that the duplication of salary occasioned by plaintiff's delay in bringing his action is sufficient prejudice for the application of the principle of laches. Miner v. United States, 143 Ct.Cl. 801 (1958); Dion v. United States, 137 Ct.Cl. 166 (1956); Bovard v. United States, 160 Ct.Cl. 619, cert. denied, 374 U.S. 830, 83 S.Ct. 1872, 10 L.Ed.2d 1053 (1963); Albright v. United States, 161 Ct.Cl. 356 (1963); Alpert v. United States, supra; and Gersten v. United States, 364 F.2d 850, 176 Ct.Cl. 633 (1966).

■ In this case the passage of time almost equals the limitations period which plaintiff asserts is applicable. As we said in Gersten v. United States, supra, 364 F.2d at 852, 176 Ct.Cl. at 636:

[T]he longer the delay the less need there is to show, or search for, specific prejudice, and the greater the shift to the plaintiff of the task of demonstrating lack of prejudice * * *.

Furthermore, plaintiff's claim is premised on the contention that procedures prescribed by section 14 of the Veterans' Preference Act of 1944, ch. 287, sec. 14, 58 Stat. 390, as amended by Act of August 4, 1947, ch. 447, 61 Stat. 723 and modified by the Act of September 6, 1966, Pub.L. No. 89–554, §§ 7511 and 7512, 80 Stat. 528, were not followed in effecting his placement on leave without pay or his removal. In relation to the removal, because of his delay, records were lost or destroyed pursuant to record disposition instructions. As a consequence thereof, it is not possible to reconstruct with any accuracy the precise personnel procedures that were followed in effecting his removal and his placement on leave without pay. Moreover, because of the long delay in filing suit, employees who might have had knowledge of and been able to offer information concerning the procedures followed, could not remember what had happened.

Mrs. Kessler, who authored the letter of October 11, 1957, previously referred to, died before her testimony could be taken, and prior to her death she had been too ill to testify. Consequently, defendant could no longer establish facts concerning plaintiff's removal, either as to time or procedures followed.

This court, in the recent case of Jackson v. United States, 179 Ct.Cl. 29, cert. denied, 389 U.S. 985, 88 S.Ct. 468, 19 L. Ed.2d 478 (1967), had occasion to deal with the doctrine of laches in a case strikingly similar to this wherein the court denied Jackson's claim based on his delay in filing suit. Our statement in that decision is equally applicable to the instant case. The attempt to invalidate a removal is "in no sense dependent upon * * * first securing a reversal of the court-martial convictions, * * *." [At p. 37.]

■ We adhere to our opinion in Jackson v. United States, supra, and hold that plaintiff has offered nothing by way of

justification or excuse for delays that ensued after October, 1957. Imprisonment is not a legal disability under 28 U.S.C. § 2501, which would extend plaintiff's time for filing suit. This is made manifest by the numerous cases through the years in which prisoners confined in Federal or state penal institutions have prosecuted claims in this court. E. g., Smith v. United States, 168 Ct.Cl. 242 (1964); Webster v. United States, 179 Ct.Cl. 917 (1967). Plaintiff has failed to show that he was prevented by prison authorities from filing suit.

On the facts before us we conclude that plaintiff's suit is barred by laches. Accordingly, plaintiff is not entitled to recover, and the petition is dismissed.